This appeal arose out of an action based upon breach of a timber contract. The suit was filed by C.E. and Martha Loftin against International Paper Company. International Paper thereafter filed a third-party complaint against Bill Whilden, individually and doing business as Dale Timber Company (hereinafter referred to as Whilden) based upon an indemnity agreement. The trial court entered a judgment in favor of the Loftins, and, further found that Whilden was not liable to International Paper in the third-party action. International Paper appeals from the portion of the judgment in favor of third-party defendant Whilden, seeking indemnification for the total judgment.
The sole issue raised is whether the purported indemnity agreement between International Paper and Whilden was executed under duress.
On October 19, 1973, International Paper entered into a contract to purchase from the Loftins timber on land they owned in Dale County. The contract provided that only timber which was selectively marked with yellow paint would be cut. Commencing on October 29, 1973, and culminating on May 22, 1974, International Paper entered into a series of contracts with Whilden for the cutting and hauling of timber on the Loftin tract. International Paper, nevertheless, retained control over the project and assigned one of its employees to supervise the cutting of the Loftin tract.
Sometime around March 1974, International Paper discovered that unmarked trees had been cut. Representatives from International Paper then unsuccessfully attempted to resolve the controversy with the Loftins. Cutting operations were temporarily suspended in order to make a stump tally to determine the number of unmarked trees cut. Cutting eventually resumed, and was finally completed on July 18, 1974.
While the Loftin cutting project was in progress, Whilden entered into a separate agreement to purchase logs from International Paper. In order to purchase the logs, Whilden was required to make an advance down payment which was to be held by International Paper until final payment was received after delivery, at which time the unused portion was to be returned to Whilden. To make the advance payment, *Page 562 
Whilden borrowed the money from a bank.
At the conclusion of the Loftin cutting project, International Paper owed Whilden approximately $7,000.00. Because of the dispute about the unmarked trees, International Paper refused to release this amount to Whilden unless he would execute a blanket indemnity agreement holding International Paper harmless from liability to the Loftins.
Whilden signed the indemnity agreement allegedly because he was told that only approximately thirty trees had been improperly cut, and because he needed to get his money to repay the bank loan. International Paper, on the other hand, argued that Whilden knew of the Loftins' claim of $40,000.00 worth of damages at the time he entered into the indemnity agreement.
In rendering its judgment, the trial court initially found that International Paper had breached its contract with Loftin by cutting unmarked trees and failing to use good timberland management and forestry practices. As a proximate result of the breach, damages were assessed at $27,500.00. Concluding that the breach was caused solely by the negligence of International Paper and not from any conduct on the part of Whilden, the trial court found that Whilden was not liable to International Paper, ruling as follows:
 "The court further finds that since the breach and resulting damages to the Loftins were caused by the conduct of International Paper in exercising control of the cutting and the forestry practices, Bill Whilden and Dale Timber were not liable to International for damages at the time the purported indemnity agreement was executed and that said agreement was executed under duress."
The issue presented for our review is whether the trial court properly found that the agreement was executed under duress.
Although not specifically enunciated, it is implicit in the trial judge's finding of duress that he was actually referring to a species of duress commonly known as "economic duress" or "business compulsion." In general, there has been a growing recognition in many jurisdictions that a contract may be executed under such circumstances of business necessity or compulsion as to render the contract involuntary and entitle the coerced party to excuse his performance, especially where undue advantage or threat to do an unlawful injury is shown. 25 Am.Jur.2d Duress and Undue Influence § 6 (1966).
Expanded from the common law concepts of duress, fraud, and undue influence, the modern doctrine of economic duress has gained acceptance in many states, including Alabama. SterlingOil of Oklahoma, Inc. v. Pack, 291 Ala. 727, 287 So.2d 847
(1973); McElrath v. Consolidated Pipe Supply Co.,351 So.2d 560 (Ala. 1977); Ancora Corp. v. Miller Oil Purchasing Co.,396 So.2d 672 (Ala. 1981); Ralls v. First Federal Savings and LoanAssociation of Andalusia, 422 So.2d 764 (Ala. 1982); Board ofSchool Commissioners of Mobile County v. Wright, 443 So.2d 35
(Ala.Civ.App.), rev'd on other grounds, 443 So.2d 40 (Ala. 1983).
In general, many courts have found that three essential elements, or a variation thereof, are necessary to a prima facie case of economic duress: (1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; (3) the absence of any reasonable alternative to the terms presented by the wrongdoer. Sonnleitner v. Commissioner,598 F.2d 464 (5th Cir. 1979); see generally J. Calamari J. Perillo, Contracts § 9-2 (2d ed. 1977); 9 A.L.R. 4th 942 (1981); Totem Marine Tug Barge, Inc. v. Alyeska PipelineService Co., 584 P.2d 15 (Alaska 1978).
The Restatement (Second) of Contracts § 175 (1979), defines "economic duress" as follows:
 "WHEN DURESS BY THREAT MAKES A CONTRACT VOIDABLE (1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim." *Page 563 
In Ralls v. First Federal Savings and Loan Association ofAndalusia, 422 So.2d 764 (Ala. 1982), we noted:
 "While the doctrine of economic duress or business compulsion is constantly being expanded by the courts, it may be invoked only to prevent an injustice and not to accomplish an injustice. The doctrine applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto."
Ralls, 422 So.2d at 766 (citing 17 C.J.S. Contracts § 177 (1963)).
Tantamount to a claim of economic duress is the wrongful pressure exerted by one party which overcomes the will of another.
 "It is said that economic duress must be based on conduct of the opposite party and not merely on the necessities of the purported victim. The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress. Chouinard v. Chouinard, 568 F.2d 430 (5th Cir. 1978)."
Board of School Commissioners of Mobile County v. Wright,443 So.2d 35, 38-39 (Ala.Civ.App.), rev'd on other grounds,443 So.2d 40 (Ala. 1983).
In determining whether International Paper exerted any wrongful pressure upon Whilden so as to render the contract involuntary, we initially note that a threat to breach a contract or to withhold payment of an admitted debt may constitute a wrongful act. Totem Marine Tug Barge, Inc. v.Alyeska Pipeline Service Co., 584 P.2d 15, 22 (Alaska 1978) (citing Hartsville Oil Mill v. United States, 271 U.S. 43, 49,46 S.Ct. 389, 391, 70 L.Ed. 822 (1926), Austin Instrument Inc.v. Loral Corp., 29 N.Y.2d 124, 324 N.Y.S.2d 22, 25,272 N.E.2d 533, 535 (1971); Capps v. Georgia-Pacific Corp., 253 Or. 248,453 P.2d 935 (1969). While the mere withholding of payment of a debt, without more, is insufficient to constitute economic duress, Hackley v. Headley, 45 Mich. 569, 8 N.W. 511 (1881);Vines v. General Outdoor Advertising Co., 171 F.2d 487 (2d Cir. 1948), in this case the trial judge could have found that there existed the additional element of bad faith on the part of International Paper. Totem Marine, supra, 584 P.2d at 22,Restatement (Second) of Contracts, § 318 Comment (e) (1979).
In the instant case, the evidence presented at trial supported a conclusion that, not only did International Paper fail to repay its admitted debt, but it also failed to disclose the existence of material facts to Whilden. Before signing the indemnity agreement, Whilden was told by representatives from International Paper that there had been only about thirty trees negligently cut. However, an independent appraisal by the Loftins revealed that over 650 unmarked trees had in fact been improperly cut. Although aware of the appraisal, International Paper failed to disclose its existence to Whilden prior to the execution of the indemnity agreement.
Economic duress is not proved merely by showing a wrongful act. In addition, the victim must show that he had no reasonable alternative but to agree to the other party's terms or face serious financial hardship. Totem Marine, supra, 584 P.2d at 22, and cases cited therein.
In this case the trial court could have reasonably determined that Whilden had no choice but to accept the terms of the agreement, especially when considered in light of the superior bargaining power of International Paper and the financial difficulties that would be caused due to defendant's failure to pay. International Paper is the nation's largest paper company, while Dale Timber, on the other hand is a sole proprietorship owned by Whilden. In order *Page 564 
to purchase the logs from International Paper, Whilden had to take out a loan which had to be repaid to the bank. Whilden's testimony indicated that he would not have signed the agreement had he been informed that liability for more than thirty trees was involved, and had he not needed to get his money back.
The case was heard by the trial court, sitting without a jury. Under our ore tenus standard of review, the trial court's findings carry a presumption of correctness which will not be disturbed on appeal unless palpably wrong, without supporting evidence, or manifestly unjust. Skinner v. Florence,439 So.2d 118 (Ala. 1983). Accordingly, we find that the trial court could reasonably have found that International Paper took unfair advantage of Whilden's economic necessities to coerce him into making the agreement.
AFFIRMED.
ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.