This is an appeal from a judgment of the Circuit Court of Madison County in an action for dissolution of a partnership and an accounting.
Plaintiff, Elwyn Reed, and defendant David Crow were equal partners in an architectural firm from June 1, 1971, until its dissolution on May 31, 1978. At trial, Reed and Crow stipulated that all partnership matters were settled except for: (1) a $15,000.00 account receivable; (2) a credit for services rendered by the partnership to Mr. Jerome Averbuch and used as partial down payment on condominiums purchased by the defendants; (3) miscellaneous claims by Crow against Reed totaling $27,369.18; and (4) Reed's interest in two condominiums which he claims are partnership property. Crow and his wife, Margaret Bell Crow, maintain that they, and not the partnership, own the condominiums.
The trial court found that while Reed and Crow were partners, Crow exchanged the architectural services of the partnership as partial consideration toward the purchase of the two office condominiums. From the evidence presented, the court also found the value of the partnership services credited toward the down payment to be $10,203.37, and that Mr. and Mrs. Crow had executed mortgages of $112,500.00 on each of the condominiums. Reed contends that the Crows purchased the property in their names because he (Reed) was expecting federal tax liens to be filed against him for delinquent taxes and he wished to spare the partnership property from possible tax liens. The trial court found that the only non-party witness to the condominium agreement was the partners' accountant, who testified that Reed and Crow agreed that Reed had an inchoate interest which could be perfected by Reed's assumption of "the liabilities incident to ownership as a partner." Crow's offer to Reed, the accountant testified, "was to be executed within a `reasonable time'." Crow sent Reed a memorandum on March 31, 1978, stating that Reed would be deeded a one-half interest in the condominiums when Reed was prepared "to handle the necessary paper work to insure [his] portion of the liability." Crow also offered to buy Reed's interest for half of the performance equity (1/2 X $10,203.37). At the time the partnership was dissolved, Reed and Crow disagreed on the value of the services contributed toward the down payment. On June 30, 1978, Crow wrote a letter advising Reed that since previous efforts to settle the matter had failed, he was "treating the buildings as his sole property." Approximately eleven months later, on May 9, 1979, Reed signed and returned the March 31, 1978, memorandum accepting Crow's *Page 17 
offer to assume a one-half interest. Crow replied, on May 23, 1979, that Reed's failure to contribute to the performance of the contract on the condominiums extinguished any obligation Crow had to recognize Reed's option as to ownership of the property.
The trial court said that Reed's failure to assert his interest for nearly five years would, if he prevailed, place him in the position of benefitting from the appreciation of the property without having exposed himself to any of the risk. It concluded:
 A partnership contemplates a sharing of the liabilities as well as the assets. When the partnership was dissolved, Crow gave Reed the opportunity to protect his interest by accepting his responsibility as a partner. To accept his partnership responsibilities, Reed would have had to perform work or pay for the performance of work expended to fulfill the contract with Averbuch, pay for his portion of the purchase price and maintain incidences of ownership toward the property for the past seven (7) years.
The court found, therefore, that the condominiums are not partnership property, but belong exclusively to Mr. and Mrs. Crow.
Although more than $10,203.37 in services was ultimately contributed toward the purchase price of the condominiums, the court said the evidence showed most of the work credited toward the down payment was done after May 31, 1978, the date of dissolution. It held, therefore, that Reed was entitled to one-half of the $10,203.37 in services invested prior to dissolution, plus six percent interest; a total of $8,410.40.
Crow's miscellaneous claims totaling $27,368.18, the court said, were "either unsupported by the evidence or should be barred by laches."
Reed testified that he had collected an account receivable of $15,000.00 after the partnership was dissolved, which was owed to the partnership. The court ordered that Reed pay Crow one-half of the amount received, i.e., $7,500.00, plus interest, a total of $10,478.89. On balance, the court concluded that Reed owed Crow a total of $2,068.48 to settle the accounts of the partnership.
The parties stipulated at trial that the only business left for the court to resolve was the condominium ownership, the value of services contributed toward the purchase price, the monetary claims of $27,369.18 and an account receivable of $15,000.00. The focus of this appeal is the court's finding regarding ownership of the two condominiums. The issue we must resolve is whether the trial court erred in finding that the two office condominiums were the property of Mr. and Mrs. Crow and not of the partnership.
Reed cites § 10-8-70 (b), Code of Alabama, 1975, in support of his contention that since partnership services were credited toward the down payment on the condominiums, the condominiums are partnership property. That section reads, in part:
 Property is presumed to be partnership property if it is purchased with partnership funds even though the title or other interest is acquired in the name of an individual partner or partners.
While it is true, as § 10-8-70 says, that the law "presumes" property bought with partnership funds to be partnership property, this Court has said, in Burgess Mining ConstructionCorp. v. Lees, 440 So.2d 321 at 330 (Ala. 1983):
 Ordinarily, personalty purchased from a third person with partnership funds is regarded as firm property; however, the mere use of partnership funds in the acquisition of personalty absent an agreement to the contrary does not necessarily make the personalty property of the partnership. 68 C.J.S. Partnership, § 70 (c) (1950). Hence, the question is one of intention: whether or not the facts and circumstances indicate that the personalty acquired with firm funds was intended to become partnership property.
Although Burgess involved personal property, § 10-8-70 applies equally to personalty and to realty. Here, as was the case *Page 18 
with regard to mining equipment in Burgess, resolution of the issue turns on the intention of the parties at the time of the purchase, not merely the use of partnership services as partial payment.
Reed's contention that the court misapplied Alabama partnership law, and committed reversible error by finding the condominiums are not partnership property, is not persuasive. The trial court heard testimony from the only non-party witness to the agreement between Reed and Crow, their accountant, who said that Reed's interest was inchoate. To perfect that interest, the accountant testified, Reed was required to assume his part ownership within a "reasonable time." No mention was made of partnership ownership of the property, only that Crow and Reed would have individual interests in the condominiums. Reed said that because his tax problems prevented him from taking part in the purchase, all transactions relevant to the acquisition of the property were in the names of Mr. and Mrs. Crow so as to avoid the possibility that it would be considered partnership property. A separate account was established for receipt of rental income from the condominium offices, apart from the partnership funds. Testimony revealed that the partnership paid rental for its use of space in the condominiums. After dissolution, Crow occupied the same space individually and, again, paid rent into the separate account. Reed testified that, after dissolution, he left Crow with responsibility for the rental obligation, employee salaries, and the collection of accounts receivable. Reed shared no liability for repayment of the mortgages on the condominiums and produced no evidence that the property was ever intended to be deeded to Crow and Reed as partnership property. All management of the property was left to Crow, including renting space to other tenants.
The standard of review employed by the Court in this case is clear:
 Under Supreme Court's ore tenus standard of review, trial court's findings carry presumption of correctness which will not be disturbed on appeal unless palpably wrong, without supporting evidence, or manifestly unjust.
International Paper Co. v. Whilden, 469 So.2d 560 (Ala. 1985).
Reed argues that the presumption explicit in § 10-8-70 (b) has not been overcome. We disagree. A review of the record supports the trial court's conclusion that the condominiums are not partnership property. The court heard testimony from the partnership's accountant, the only non-party witness to the condominium ownership agreement, that Reed and Crow agreed to ownership as individuals, not as partners. Furthermore, Reed's assertion that the court ignored Alabama partnership law by failing to order an accounting is without substance. Reed and Crow mutually agreed to dissolve their partnership, which they did on May 31, 1978. Crow carried on individually, as did Reed, from that point onward, even though a partnership is not terminated, by law, until winding up is completed. Reed mistakenly relies on § 10-8-103, which clearly applies to "rights of retiring partners or estate of deceased partners." This section is inapposite, inasmuch as neither Crow nor Reed retired from the partnership. They continued to practice their profession, albeit in their separate capacities.
Reed's argument that the court erred by not ordering an accounting disregards the stipulation made by Reed and Crow at the outset of the trial. Both stipulated that all debts and accounts of the partnership had been settled except for the items brought before the court. The court resolved each of the matters at issue, albeit not necessarily to the satisfaction of both parties, thus leaving nothing further to be accounted for. Counsel for Reed stated that "no debts, no accounts" remained unsettled except for what was at issue. By the parties' own stipulation, once the court had resolved the matters before it, nothing remained that required an accounting.
Reed's final argument is that the trial court improperly denied his claim to part ownership of the condominiums on the grounds that he had delayed too long in *Page 19 
filing. This is a misconstruction of the court's finding. The court found, from the evidence presented, that the condominium property was originally intended to be owned by Crow and Reed as individuals, not as partners. Reed declined to assume partial ownership for tax reasons and had an inchoate interest which, the court found, was not pursued within a reasonable time as the parties had agreed. Further, it said Reed should not be allowed to profit from the property after not having assumed any incidences of ownership or any responsibility for the mortgage for nearly five years. Reed's claim was not denied on the grounds that he waited "too late" to ask for an accounting, as he contends. This is an action in equity. The trial court had ample evidence to find, as it did, that Reed's inchoate interest was not assumed within a reasonable time and that he should not now be permitted to profit, since he has been exposed to no risk.
The judgment of the circuit court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ., concur.