STEAGALL, Justice.
This appeal arises from an alleged breach of a contract for the sale of stock in which John L. Burns agreed to sell all of his outstanding shares in Sealy Insurance Agency, Inc., to that company. Burns sued the insurance company, Charlie 0. Sealy, Virginia R. Sealy, and William E. Payne, alleging duress, fraud, and breach of contract. The defendants’ answer included several affirmative defenses, among them the statute of limitations, and also asserted a counterclaim for breach of a covenant by Burns not to compete.[1] The trial court granted summary judgment for the defendants on the duress and fraud counts but denied it as to the breach of contract count, and entered an order pursuant to Rule 54(b).
Prior to working for Sealy Insurance, Burns was a part owner of a Tuscaloosa insurance agency known as BMP, Inc. (Burns, McCook and Painter). In 1977, after his two partners had left the firm, Burns merged his agency with Sealy Insurance and received approximately 15% of its stock. About the same time as the merger, Burns and the other stockholders of Sealy Insurance, Charlie and Virginia Sealy and William Payne, executed a buy-sell agreement that restricted the transfer of shares of Sealy Insurance stock on the open market. Specifically, the agreement required a shareholder to offer all of his or her stock to the other shareholders, based upon a valuation formula provided in the agreement, prior to offering it to an outside purchaser.
Between 1977 and 1982, the relationship between Burns and the other stockholders *765 deteriorated, and by October 1982, William Payne and Charlie Sealy proposed that Bums exchange his stock in Sealy Insurance for 50% ownership in a satellite insurance agency and a guaranteed salary for one year. Bums rejected their offer and counter-offered to sell them his stock and to work for Sealy Insurance on a commission basis. A dispute arose over the valuation of the stock, with Burns contending that it should be priced according to the valuation formula set out in the buy-sell agreement. Although Burns demanded between $250,000 and $350,000 for his stock, the defendants refused to pay him more than $85,000.
Finally, on January 21, 1983, Burns signed the stock agreement and resigned from Sealy Insurance the same day. Bums was to receive $85,000 for his stock, which was to be paid in 60 monthly installments, with the first payment due on February 1,1983, and payments due thereafter on the first day of every month. The stock sale agreement also included a covenant not to compete, in which Burns agreed not to compete, directly or indirectly, with the company in Tuscaloosa County for a period of five years from the date of the agreement. In the event of a breach by Bums, the agreement further provided that the company could set off the amount of any damages it might suffer against any amount payable to Burns for his stock.
On May 1, 1983, Bums became an agent at the Insurance Center of Tuscaloosa. In November 1984, after complaining several times to Burns about his breach of the covenant not to compete, the defendants exercised their right of set off and they ceased making payments to Burns. Although they later resumed the payments, Burns returned them on the advice of counsel, and he filed suit on April 16, 1985.
Burns’s claim of duress derives from his contention that he was “intimidate[d] and coerce[d]” into signing the agreement for the sale of his stock, and that he sold it for an amount less than what he should have received according to the valuation formula in the buy-sell agreement. The trial court based its summary judgment on the fact that the one-year statute of limitations had run.[2] Burns argues that the statute was tolled during the period he was allegedly being coerced and pressured into signing the agreement, and that the duress and coercion ceased when the agreement was executed.
Burns’s argument is misplaced for several reasons. First, we are unwilling, as we were unwilling in Guillot v. Beltone Electronics Corp., 540 So.2d 648 (Ala.1988), to allow a cause of action for duress based upon these facts. As did the Guil-lots, Burns cites International Paper Co. v. Whilden, 469 So.2d 560 (Ala.1985), as authority to support his duress claim. As we pointed out in Guillot, the defendant in International Paper pleaded economic duress as a defense and was permitted to avoid the contract. Burns’s action sounds in tort. Moreover, although performance under a contract may be excused or the contract itself may be vitiated based upon proof of duress, nowhere in Burns’s complaint does he demand that the contract for the sale of stock be rescinded or set aside.
Even were we not reluctant to allow Burns’s duress count, the summary judgment is nonetheless proper because his claim is barred by the applicable one-year statute. This action was not filed until April 16, 1985, over two years after Burns says the duress and coercion began (1982), and over two years from the time any duress or coercion ended (with the signing of the agreement January 21, 1983). Burns’s brief on appeal is replete with citations to authorities from several other jurisdictions on the tolling issue, none of which is controlling or applicable to these facts. He cites no Alabama authority that allows a suit for duress. We also note that, aside from the limitations issue, there is insufficient evidence of any wrongful *766 acts or threats by the defendants to make out a prima facie case of economic duress. International Paper, supra.
The trial court’s summary judgment on the fraud count was also based on the statute of limitations. That ruling was likewise correct for two reasons. First, Burns failed to aver with specificity when he discovered the alleged fraud. Boros v. Palmer, 472 So.2d 1020 (Ala.1985); Angell v. Shannon, 455 So.2d 823 (Ala.1984). Section 6-2-3 tolls the limitations period with regard to fraud pending such discovery:
“In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.”
The words “two years” were substituted for “one year at the time fraud actions were transferred to the two-year statute.” See Act 85-39, 1984-85 Ala.Acts. Moreover, “the facts constituting fraud are to be considered as discovered when they should have been discovered by a reasonably prudent person.” Boros, 472 So.2d at 1024.
Burns’s first check under the 1983 stock sale agreement was due February 1, 1983, but the check the defendants sent was dated February 8, 1983, and was received late. Burns testified that the lateness of that first check gave him his first indication of the alleged fraud:
“Q. I’m really asking about if during the year 1983 you realized that you had been misled about when you would receive payments?
“A. Well, I think I had been misled. I realized that February 8th.”
Thus, there were sufficient facts to alert Burns in February 1983 to the alleged fraud. He did not sue until April 16, 1985. We also note that, in order to base a fraud action on a statement regarding a future event, the plaintiff must produce evidence of an actual intent to deceive and not to perform, existing at the time the representation was made, George v. Federal Land Bank of Jackson, 501 So.2d 432 (Ala.1986), because a failure to perform, alone, does not evidence an intent to deceive. P & S Business, Inc. v. South Central Bell Telephone Co., 466 So.2d 928 (Ala.1985). Burns testified in his deposition that he had no evidence that the defendants, at the time they entered the contract, intended not to perform or intended to deceive him.
After reviewing the facts and the applicable law, we are convinced that the trial court’s judgment was correct in all respects and that it should be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. The defendants later amended their counterclaim against Burns to include the Insurance Center of Tuscaloosa, Inc., Burns’s current employer, as a third-party defendant; however, the trial court granted summary judgment in its favor on June 13, 1988, finding that the non-competition agreement had expired by its own terms on January 21, 1988. Burns does not raise an issue on appeal regarding this ruling.

. An action under the now-repealed § 6-2-39, Ala.Code 1975 (the one-year statute), that was barred as of January 9, 1985, was not revived by transfer of the action to the two-year statute, § 6-2-38, which became effective on that date. Lader v. Lowder Realty Better Homes & Gardens, 512 So.2d 1331 (Ala.1987). See Ala. Const. 1901, § 95.