The plaintiff, Marc B. Wilson, appeals from a partial summary judgment entered in favor of the defendants, Southern Medical Association (S.M.A.) and William J. Ranieri. We affirm.
The issues are (1) whether there was a contract of employment between Wilson and S.M.A., and a breach thereof; (2) whether there was a scintilla of evidence of fraud and/or duress in procuring Wilson's resignation from S.M.A.; (3) whether Wilson, by accepting and retaining financial benefits, ratified an agreement as to the terms of severance from employment with S.M.A.; and (4) whether publication, in a corporate setting, of an allegedly libelous memorandum is an actionable claim.
Wilson and S.M.A. negotiated and signed an employment contract in December 1984 for the period January 1, 1985, through December 31, 1985. In August or September 1985, Robert Mosca, Wilson's supervisor, approached William Ranieri, executive director of S.M.A., and requested permission to begin negotiations with Wilson for a 1986 employment contract. Ranieri told Mosca that they would "get to it later," but they never did. On January 2, 1986, Ranieri sent to Mosca a memorandum in which he requested that Mosca terminate Wilson's employment. The memorandum contained some allegedly libelous statements about Wilson. The memorandum was shown only to Ranieri's secretary, Mosca, and Wilson. Mosca discussed the contents of the Ranieri memorandum with Wilson, but deferred to Ranieri all further discussions pertaining to termination.
Wilson met with Ranieri and asked to stay on at S.M.A. until April 1986. Ranieri said he could stay until January 17, 1986, at which time he wanted Wilson to resign. They specifically discussed vacation money, pension funds, severance pay, and an escrow account. Wilson called his lawyer and was advised not to sign a resignation. Ranieri informed Wilson that, should he refuse to resign, the financial arrangements concerning his separation would not be honored.
In his letter of resignation to Ranieri, dated January 17, 1986, Wilson set forth his understanding of the "financial arrangements" that had been previously discussed by Wilson and Ranieri:
 "1) My $25,000.00 escrow account due at termination of employment will be paid out in two payments. The first payment of $12,500.00 will be paid March 1, 1986. The second payment will be paid April 1, 1986 of equal amount of $12,500.00.
 "2) Fringe benefits will continue through April 1, 1986 (includes insurance coverage).
 "3) 20 days vacation money will be paid February 1, 1986.
 "4) February salary will be paid as severance pay February 1, 1986.
 "5) Retirement money will be disbursed based on 5 years vesting, effective March 1, 1986."
By letter that same day, Ranieri accepted Wilson's resignation, stating:
 "This is to notify you that I have accepted your resignation, effective April 1, 1986 with the conditions outlined in your memorandum with the following corrections: *Page 512 
 "1. Your February 1 payroll check will cover you through the 15th of February.
 "2. Your vacation pay will be disbursed to you over the next two pay periods, February 15 and March 1.
 "3. Your escrow account will be paid to you in three installments as payroll checks are distributed to you on March 15, April 1, and April 15.
 "4. Your retirement money will be disbursed according to the terms of our Pension Program, and the decision to the amount of vesting will be determined by Safeco Insurance Company.
"Points 2 and 5 in your memorandum are stated correctly."
Ranieri's letter of January 17 was a modification of Wilson's version of the financial arrangements. After that day, Wilson accepted payments from S.M.A. in accordance with the Ranieri letter. No further correspondence between Wilson and Ranieri regarding the financial arrangements took place until May 14, 1986, when Wilson's lawyer wrote a demand letter to Timonthy R. Taylor, director of operations at S.M.A. Wilson claimed that his salary should have been paid at a rate of $38,000 per year instead of $30,000. In addition, Wilson requested payment for commissions due for advertising in certain medical periodicals.
The dispute was not resolved, and on November 14, 1986, Wilson sued S.M.A. and Ranieri alleging unlawful termination of employment, breach of contract, fraud and misrepresentation, and libel and slander. Both defendants will be referred to sometimes as "S.M.A."
The trial court entered summary judgment in favor of the defendants on all counts of the complaint except the breach of contract claim relating to the interpretation of the terms of the January 17 agreement (the Ranieri letter), and reserved that issue for a jury trial. The court made that judgment final pursuant to Rule 54(b), A.R.Civ.P. Wilson appealed.
Wilson argues that the trial court erred in entering the partial summary judgment. Wilson argues that there were genuine issues of material fact as to the following: the existence and breach of a 1986 employment contract; the resignation and agreement as to financial arrangements allegedly procured by fraud and/or duress; wrongful termination; and libelous publication of the memorandum.
S.M.A. argues that summary judgment was proper and that Wilson failed to show a scintilla of evidence of fraud, duress, or libel. S.M.A. argues that Wilson became an employee-at-will after December 31, 1985, and, by accepting and retaining the financial benefits outlined in the January 17 Ranieri letter, ratified the letter as the agreement as to the financial arrangements upon severance.
"[O]ur review of a trial court's ruling on a motion for summary judgment is limited to the same factors that were considered by the trial court in making its decision." Hill v.Talladega College, 502 So.2d 735, 737 (Ala. 1987). "[T]he movant has the burden of negating the existence of any issue of material fact; . . ., and if there is a scintilla of evidence supporting the non-moving party, summary judgment is inappropriate. . . . In determining the existence of genuine issues of material fact, the record must be viewed by this Court in a light most favorable to the non-moving party." (Citations omitted.) Ryan v. Charles Townsend Ford, Inc.,409 So.2d 784, 786 (Ala. 1981). The plaintiff "cannot rely upon the allegations contained in his pleadings . . . to defeat a motion for summary judgment." Dunaway v. King, 510 So.2d 543, 546
(Ala. 1987).
As to the first issue, whether an employment contract existed for 1986 and, if so, whether S.M.A. was in breach thereof, we find the record devoid of any evidence to indicate the existence of a 1986 contract. A review of the depositions of Wilson and Mosca does reveal that several conversations occurred and that they essentially were about the need to negotiate, draft, and sign a new contract for Wilson; however, none of these events took place. Ultimately, we see no evidence of an express or an implied contract. *Page 513 
 "An implied contract arises where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract. Such a contract must contain all the elements of an express contract, which rest on consent, and it is to every intent and purpose an agreement between the parties, and cannot be found to exist unless a contract status is shown."
Water Works Sanitary Sewer Board v. Norman, 282 Ala. 41, 45,208 So.2d 788 (1968), quoting Gilbert v. Gwin-McCollum FuneralHome, Inc., 268 Ala. 372, 106 So.2d 646 (1958). After December 31, 1985, Wilson became a terminable employee-at-will. Therefore, the trial court properly entered summary judgment on this issue.
As to the second issue, whether the January 17 agreement is invalid due to duress and fraud, "Alabama recognizes that upon a showing of duress or undue influence a party may be relieved of contractual obligations." Tidwell v. Tidwell,505 So.2d 1236, 1238 (Ala.Civ.App. 1987); Head v. Gadsden Civil ServiceBoard, 389 So.2d 516 (Ala.Civ.App. 1980), cert. denied,389 So.2d 520 (Ala. 1980). Wilson relies on one conversation in which Ranieri allegedly threatened to forestall or withhold payment of funds from an escrow account if he did not submit his resignation. "[The] mere withholding of payment of a debt, without more, is insufficient to constitute economic duress."International Paper Co. v. Whilden, 469 So.2d 560, 563 (Ala. 1985). "Economic duress is not proved merely by showing a wrongful act. In addition, the victim must show that he had no reasonable alternative but to agree to the other party's terms or face serious financial hardship". Id. Wilson sought the advice of legal counsel after the alleged threat was made and before submitting his resignation and accepting the terms of the January 17 agreement he now wishes to rescind.
Wilson contends that Mr. Ranieri induced him to sign the January 17 agreement by fraudulently misrepresenting the amount he was to be paid as salary. (Wilson claimed that his salary was $38,000, not $30,000.) The following appears in the record:
 "Q. All right. In your complaint, you claim that Mr. Ranieri impliedly represented to you that you would be paid the sums of money you are claiming. Do you think he tried to deceive you?
"A. Yes.
 "Q. Tell me why. What facts do you know of that make you think Mr. Ranieri tried to deceive you?
 "A. My contract. I have a contract that states what I get and what my total contract is and I was just under the assumption that is what I was going to get and it was implied that I was going to get —
"Q. How did he imply that?
 "A. He said I was going to get my money that was owed me for my salary or when I say salary, he said salary, but my income that I make.
"Q. Meaning draw?
 "A. No, he said salary, which means $38,000 a year.
 "Q. Tell me again why or any basis for your belief that Mr. Ranieri tried to deceive you.
"A. I just told you.
"Q. Well, I didn't understand you. If you would?
 "A. He told me that he would pay me whatever was owed me, which is based on, you know, my salary which was my contract. "Q. Is that the only basis for your claim that he tried to deceive you?
"A. On that particular count?
"Q. Yes.
 "A. That is the only thing I can go on is what his word is.
 "Q. And his word was that he would pay you what these two documents reflect, the two memoranda dated January 17, 1986, Defendant's Exhibits 2 and 3?
"A. Yes." *Page 514 
Wilson has failed to offer any proof of a false representation on which he relied to his detriment. Absent proof that he relied to his detriment on a misrepresentation, the fraud claim must fail as a matter of law. Sanders v.Kirkland Co., 510 So.2d 138 (Ala. 1987). Some intent to deceive must also be shown. Fraud is never presumed, and a person who asserts fraud has the burden of proof. Johnson v.Keener, 370 So.2d 265 (Ala. 1979). We hold that Wilson has not shown a scintilla of evidence of fraud or duress. Therefore, the trial court did not err in entering summary judgment on this issue.
There is a material issue of fact as to what S.M.A. owes Wilson under the January 17 agreement as "salary." The trial court did not enter summary judgment as to that issue and properly reserved that issue for a jury trial.
As to the third issue, whether Wilson ratified the January 17 agreement, this Court held in Lawler Mobile Homes, Inc. v.Tarver, 492 So.2d 297, 305 (Ala. 1986), that "A party, by his actions and acceptance of the benefits of a contract and by operating under that contract, may ratify and confirm it. . . ." It is apparent that Wilson accepted the benefits of the financial arrangements outlined in the January 17 Ranieri letter. Wilson's lawyer sent a letter to S.M.A. demanding additional sums of money calculated according to Wilson's interpretation of the term "salary" ($38,000 and not $30,000). We hold that Wilson, by his actions, ratified by the terms of the January 17 Ranieri letter. The only issue to be determined by the trial court is the interpretation of that letter.
Finally, as to the libel issue, Wilson urges this Court to hold that libelous or slanderous communications in a corporate setting may be actionable, if communicated to a third party with actual malice. He contends that statements made in a corporate setting pertaining to an employee's performance are no less damaging than statements made in any other setting. This Court has held that "where [a] letter is dictated by a corporate employee to a fellow corporate employee in the course of transacting the corporation's business and in the line of their duty as employees of the corporation and the letter is sent to another fellow corporate employee and it is in respect to that employee's relations with the corporation, there is not sufficient publication to sustain an action for libel."Burney v. Southern Ry., 276 Ala. 637, 642, 165 So.2d 726
(1964). The record is devoid of any evidence indicating that the memorandum in question was read by anyone other than the three corporate employees involved at the time. Without more, there is is no publication. Therefore, the trial court properly entered summary judgment on this issue.
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.