Wright Therapy Equipment, LLC ("Wright Therapy"), Sheri NeSmith, Julie Akin, and Universal DME, LLC ("Universal DME"), appeal the trial court's partial summary judgment and trial judgment in favor of Blue Cross and Blue Shield of Alabama ("Blue Cross"). We hold that the trial court did not err in entering a partial summary judgment in favor of Blue Cross. However, because the trial court exceeded its discretion in denying Akin, NeSmith, and Universal DME a continuance at trial, we reverse the judgment entered following the trial and remand the case for a new trial.
 Facts and Procedural History
Akin and NeSmith were the owners of Wright Therapy, which was engaged in the business of supplying physician-prescribed durable medical equipment ("DME"). Wright Therapy billed Blue Cross according to Blue Cross's DME fee schedule for DME and other supplies Wright Therapy provided to patients insured by Blue Cross. After conducting audits of the major DME businesses in its network, including Wright Therapy, Blue Cross determined that it had been overbilled for DME and that it had paid many of the claims for DME in error. In March 2004, Blue Cross notified Wright Therapy that it had overbilled Blue Cross for DME in the amount of $759,401.62, that Blue Cross had paid those bills in error, and that Blue Cross, as permitted by the DME supplier agreement between Blue Cross and Wright Therapy, would begin withholding further payments to Wright Therapy until Blue Cross recouped the amount of the payments that had been made in error.
In April 2004, Blue Cross and Wright Therapy entered into a written agreement by which Wright Therapy agreed to make monthly payments of $40,000 to Blue Cross for a period of 10 months and to pay the remaining balance in one payment at the end of those 10 months in order to reimburse Blue Cross for the alleged over-billing. In return, Blue Cross agreed not to withhold future payments for services billed by Wright Therapy to Blue Cross. In May 2004, after Wright Therapy had remitted the first of the agreed payments, Blue Cross announced changes to the DME fee schedule for certain items of DME from which Wright Therapy had previously derived a substantial portion of its profits. Faced with diminished cash flow under the new reimbursement schedule, Wright Therapy made no further payments to Blue Cross under the agreement and ceased operations. That same month, NeSmith, Akin, and two former employees of Wright Therapy established Universal DME, LLC, in Georgia, to conduct the same type of DME business that Wright Therapy had conducted.
In July 2004, Blue Cross sued Wright Therapy alleging breach of contract, money paid by mistake, unjust enrichment, conversion, fraud, and conspiracy to commit fraud. Over the next two years, Blue Cross amended its complaint five times to add Akin, NeSmith, and Universal DME as defendants and, among other things, seeking to pierce the corporate veil and to impose successor liability on Universal DME for the claims against Wright Therapy. During this time, the trial court continued the trial five times at the joint request of the parties or the sole request of Blue Cross to allow these amendments and to allow additional discovery. In March 2006, Blue Cross and Wright Therapy *Page 704 
each moved for a summary judgment. Blue Cross amended its complaint for the last time in July 2006 and then renewed its previously filed motion for a summary judgment. The, trial court held a hearing on that motion on October 4, 2006, at which the court entered a summary judgment against Wright Therapy on the breach-of-contract claim in the amount of $630,196.38. The summary judgment disposed of the claims against Wright Therapy; however, several claims remained pending against Akin, NeSmith, and Universal DME. At the conclusion of the hearing on the summary-judgment motion, counsel for the remaining defendants moved in open court to withdraw. He simultaneously requested a continuance of the November 6, 2006, trial date to allow Akin, NeSmith, and Universal DME to retain new counsel. The trial court granted counsel's motion to withdraw but denied the motion to continue the trial date, stating that "Ms. NeSmith, Ms. Akin, Wright Therapy, Universal DME, whoever, have adequate time to obtain other counsel." When Blue Cross urged the trial court to push the trial date up even earlier, the trial court denied this request in "fairness" to the defendants. Despite contacting at least two firms, Akin, NeSmith, and Universal DME were unable to obtain counsel willing to represent them with less than one month to prepare for a trial of a complex lawsuit that had been in litigation for over two years. On October 30, 2006, Akin, NeSmith, and Universal DME again moved the trial court for a one-month continuance and supported that motion with affidavits from the attorneys they had contacted stating that it would be a violation of the Alabama Rules of Professional Conduct for the attorneys to agree to represent the defendants without a continuance because they would not be able to adequately prepare for a trial of this complexity in less than one month's time. Blue Cross opposed the continuance, and the trial court denied the motion.
Over the repeated objections of the defendants, the trial court proceeded with a bench trial on November 6, 2006. None of the defendants was represented by counsel. During the bench trial, Akin and NeSmith informed the trial court that they had counsel willing to represent them, but that counsel were unable to attend the trial on that date. They told the trial court that they were uncertain as to how to proceed, how to put on evidence, or how to question witnesses during the trial. The trial proceeded, and the trial court ultimately ruled in favor of Blue Cross, finding Akin and NeSmith personally liable for $182,900 and $198,000, respectively, for the improper transfer and depletion of the assets of Wright Therapy. It also found Universal DME liable as a successor corporation for the full amount of the summary judgment on the breach-of-contract claim previously entered against Wright Therapy. At the end of the trial, the trial court said to the defendants: "You have the right to appeal. In order to do that, you have to buy a transcript and appeal to Montgomery on the record. I would suggest — no offense to either of you. You have done a better job than most pro ses I have seen but I would never suggest that anyone is competent to represent themselves."
In December 2006, Akin, NeSmith, and Universal DME, then represented by counsel, moved to vacate the partial summary judgment, the judgment entered at trial, and for a new trial. At the hearing on this motion, the trial court noted that mistakes had been made during the litigation process by concluding, "I don't say this to disrespect counsel or prior rulings but I am confident that this matter is heading to Montgomery one way or the other and I will say that I'm not as confident *Page 705 
that it won't come back." The trial court denied the defendants' motions after holding a hearing. Wright Therapy, Akin, NeSmith, and Universal DME now appeal.
 Issues
Wright Therapy, Akin, NeSmith, and Universal DME present several issues on appeal. First, they argue that the trial court erred in entering a summary judgment in favor of Blue Cross on the breach-of-contract claim because, they say, a genuine issue of material fact exists as to whether Wright Therapy executed the April 2004 agreement under economic duress and whether that agreement is otherwise unconscionable. Second, they argue that the trial court exceeded its discretion "by allowing Defendants' previous counsel to withdraw 33 days prior to trial and refusing to grant a trial continuance to allow the Defendants time to retain counsel to represent them at trial." Appellants' brief at 3.[1]
 Standards of Review "On appeal, this Court reviews a summary judgment de novo. Ex parts Essary, [Ms. 1060458, Nov. 2, 2007] ___ So.2d ___, ___ (Ala. 2007). In doing so, we apply the same standard of review as did the trial court. Ex parte Lumpkin, 702 So.2d 462, 465
(Ala. 1997). `"`Our review is subject to the caveat that we must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.'" `Ex parte CSX Transp.[, Inc.], 938 So.2d [959] at 962
[(Ala. 2006)] (quoting Payton v. Monsanto Co., 801 So.2d 829, 833 (Ala. 2001), quoting in turn Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999)); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990). Finally, this Court does not afford any presumption of correctness to the trial court's ruling on questions of law or its conclusion as to the appropriate legal standard to be applied. Ex parte CSX Transp., 938 So.2d at 962 (citing Ex parte Graham, 702 So.2d 1215, 1221 (Ala. 1997))."
DiBiasi v. Joe Wheeler Elec. Membership Corp.,988 So.2d 454, 459 (Ala. 2008).
We review a trial court's denial of a motion for a continuance by asking whether in denying the motion the trial court exceeded its discretion. See Cheminova America Corp. v. Corker,779 So.2d 1175, 1183 (Ala. 2000); Copeland v. SamfordUniv., 686 So.2d 190 (Ala. 1996).
 "A court exceeds its discretion when its ruling is based on an erroneous conclusion of law or when it has acted arbitrarily without employing conscientious judgment, has exceeded the bounds of reason in view of all circumstances, or has so far ignored recognized principles of law or practice as to cause substantial injustice. Hale v. Larry Latham Auctioneers, Inc., 607 So.2d 154, 155 (Ala. 1992); Dowdy v. Gilbert Eng'g Co., 372 So.2d 11, 13
(Ala. 1979)."
Edwards v. Allied Home Mortgage Capital Corp.,962 So.2d 194, 213 (Ala. 2007). "In reviewing . . . the denial of a motion for a new trial, we consider the evidence in a light most favorable to the prevailing party, resolving all factual disputes in its favor. Alabama Power Co. v. Aldridge,854 So.2d 554 (Ala. 2002); Alabama Great Southern R.R. v.Johnson, 874 So.2d 517 *Page 706 
(Ala. 2003)." Systrends, Inc. v. Group 8760, LLC,959 So.2d 1052, 1057 (Ala. 2006).
 Analysis
A. Partial Summary Judgment on Breach-of-Contract Claim
Wright Therapy argues that the trial court erred in entering a summary judgment in favor of Blue Cross on Blue Cross's breach-of-contract claim because, it says, a genuine issue of material fact exists as to whether it was fraudulently induced into executing the April 2004 agreement; whether the 2004 agreement was a contract of adhesion, which it was forced to enter into because of economic duress; and whether the 2004 agreement is otherwise unconscionable. Specifically, Wright Therapy argues that had it
 "been adequately represented at the summary judgment hearing, genuine issues of material fact relating to Blue Cross's fraud in relation to the execution of the letter agreement would have been evident. Furthermore, genuine issues of material fact existed as to the enforceability of the letter agreement in light of the fact that the letter agreement constituted an unconscionable adhesion contract formed under circumstances of economic duress."
Appellants' brief at 48-49. Blue Cross argues in response that Wright Therapy's fraud-in-the-inducement argument fails because it can show no misrepresentation, noting that Wright Therapy "knew when [it] entered the Repayment Agreement that Blue Cross had the right to change the fee schedule, at any time, under the DME Agreement." Blue Cross's brief at 63. Blue Cross also argues that Wright Therapy's arguments of economic duress and unconscionability fail because Blue Cross did not commit a "wrongful act" and because Wright Therapy had reasonable alternatives to signing the agreement. We agree on both counts.
First, Wright Therapy alleges that Blue Cross fraudulently induced Wright Therapy to enter into the April 2004 repayment agreement to resolve Blue Cross's claim that Wright Therapy had overbilled it on DME. Specifically, Wright Therapy claims that "Blue Cross forced Wright Therapy to enter into a repayment agreement when Blue Cross knew that it was about to reduce its payments to all DME providers which would make it impossible for Wright Therapy to comply with the repayment agreement." Appellants' brief at 56. Wright Therapy cites this Court's decision in Anderson v. Ashby, 873 So.2d 168, 182
(Ala. 2003), for the proposition that "[f]raud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." However, as Blue Cross notes in its brief to this Court, Akin, when deposed as a principal of Wright Therapy, testified that although Blue Cross never represented that it would pay for DME at the rate it had previously paid, she was "hoping that Blue Cross would revert back to the way that they used to reimburse for specific items under DME."
This Court has stated that "fraudulent-inducement claim[s] [are] governed by the `reasonable-reliance' standard. Under that standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract." Harold Allen's Mobile Home Factory Outlet, Inc.v. Early, 776 So.2d 777, 783-84 (Ala. 2000) (citations omitted). Wright Therapy does not allege that Blue Cross did not have the right to change the fee schedule for DME. Wright Therapy *Page 707 
admits that Blue Cross's May 2004 DME fee-schedule changes were applicable to all Blue Cross's DME providers. Appellants' brief at 55. Moreover, aside from mere hope that Blue Cross would continue to pay for DME at rates that made Wright Therapy an economically viable business, Wright Therapy has offered no reasonable basis for its reliance on the notion that Blue Cross might continue compensating for DME at previous rates while simultaneously demanding that DME providers reimburse Blue Cross for overpayments made at those earlier rates. Appellants' brief at 56. In the absence of a misrepresentation of material fact or reasonable reliance thereon, Wright Therapy failed to present substantial evidence to support its claim of fraudulent inducement sufficient to overcome Blue Cross's summary-judgment motion.
Wright Therapy also alleges that summary judgment was improper because, it says, there is a genuine issue of material fact as to whether it executed the 2004 repayment agreement under economic duress. In International Paper Co. v.Whilden, 469 So.2d 560, 562 (Ala. 1985), this Court stated:
 "[A] contract may be executed under such circumstances of business necessity or compulsion as to render the contract involuntary and entitle the coerced party to excuse his performance, especially where undue advantage or threat to do `an unlawful injury is shown. 25 Am. Jur.2d Duress and Undue Influence § 6 (1966)."
This Court went on to state that in order to demonstrate a prima facie case of economic duress, a party must show "(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." InternationalPaper Co., 469 So.2d at 562. Wright Therapy appears to argue that Blue Cross "wrongfully" withheld further remittances for services billed, thus leaving Wright Therapy in financial distress with no reasonable alternative but to assent to the terms presented by Blue Cross in the 2004 agreement.
Wright Therapy's economic-duress argument fails for several reasons. First, Wright Therapy never alleges that Blue Cross lacked the authority under the terms of Blue Cross's DME agreement with its DME providers to withhold remittances in order to recover allegedly over-billed amounts. See Blue Cross's brief at 17. That withholding, therefore, cannot be deemed a wrongful act or threat by Blue Cross, and Wright Therapy has failed to provide substantial evidence to support the first element of a prima facie case of economic duress. Further, Wright Therapy's bare allegation that it was forced to accept the terms of the 2004 agreement is substantially undermined by the deposition testimony of NeSmith, in which she admits that Wright Therapy rejected earlier terms offered by Blue Cross during negotiations between the parties before signing the 2004 agreement:
 "Q. Do you remember receiving this proposal?
 "A. Yes.
 "Q. And did you accept or reject this proposal?
 "A. Reject."
In light of this testimony, it appears that the 2004 repayment agreement was the result of a good-faith negotiation between the parties in compromise of a disputed debt, rather than an agreement entered into by Wright Therapy under economic duress as Wright Therapy claims. The fact that Blue Cross may have had greater bargaining power than did Wright Therapy or that Wright Therapy may have executed the agreement out of financial necessity *Page 708 
does not alone amount to economic duress. See InternationalPaper Co., 469 So.2d at 563 ("`It is said that economic duress must be based on conduct of the opposite party and not merely on the necessities of the purported victim. The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress. Chouinard v.Chouinard, 568 F.2d 430 (5th Cir. 1978).'"). Wright Therapy has not presented substantial evidence to support any of the elements of economic duress.
Finally, in regard to the partial summary judgment in favor of Blue Cross on the breach-of-contract claim, Wright Therapy alleges that there is a genuine issue of material fact as to whether the 2004 repayment agreement is unconscionable. Again, however, Wright Therapy fails to establish by substantial evidence the elements of this claim.
Wright Therapy argues that "the repayment agreement is unenforceable because it is unconscionable." Appellants' brief at 63.
 "In Layne v. Garner [, 612 So.2d 404
(Ala. 1992)], this Court set out four factors it considered important in determining whether a contract was unconscionable:
 "`In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.'
 "612 So.2d at 408."
Blue Cross Blue Shield of Alabama v. Rigas,923 So.2d 1077, 1086 (Ala. 2005). Wright Therapy appears to argue that the 2004 agreement is unconscionable because, it argues, it lacked a "`"meaningful choice about whether and how to enter into the transaction."'" Blue Cross Blue Shield,923 So.2d at 1087 (quoting Ex parte Thicklin, 824 So.2d 723, 731
(Ala. 2002), quoting in turn other authority). This argument is belied, however, by the fact that Wright Therapy negotiated the terms of the 2004 agreement. Moreover, Wright Therapy fails to state or argue that it is unsophisticated or uneducated or that the terms of the 2004 agreement were unreasonably favorable to Blue Cross. Wright Therapy does argue that Blue Cross had unequal bargaining power; however, the record indicates that Blue Cross's bargaining power was not so unequal and oppressive that Wright Therapy was unable to reject Blue Cross's first offer of settlement. Although Wright Therapy argues that the 2004 agreement was oppressive in light of its diminished cash flow after Blue Cross amended its DME fee schedule, we note that the parties reached an agreement that allowed Wright Therapy to pay back the disputed debt over a period of 10 months with no interest on those amounts. In light of these facts and of this Court's holding in Blue Cross Blue Shield v. Rigas, we conclude that Wright Therapy has failed to produce substantial evidence indicating that the 2004 agreement was unconscionable.
Because Wright Therapy has failed to demonstrate any genuine issue of material fact as to its claims of fraudulent inducement, economic duress, or unconscionability, we affirm the trial court's partial summary *Page 709 
judgment in favor of Blue Cross on the breach-of-contract claim.
 B. Denial of Motion for a Continuance to Retain New Counsel
Akin, NeSmith, and Universal DME argue that the trial court exceeded its discretion in denying their motion for a continuance to allow them to retain new counsel after it had granted their prior counsel's motion to withdraw only 33 days before trial.
 "A decision to deny a motion for continuance is within the sound discretion of the trial court. Kitchens v. Maye, 623 So.2d 1082 (Ala. 1993); Thomas v. Kellett, 489 So.2d 554, 555 (Ala. 1986) (`It is well settled that the trial court's denial of a motion for continuance will not be overturned absent palpable or gross abuse of the trial court's discretion.')."
Ex parte Medical Assurance Co., 862 So.2d 645, 649
(Ala. 2003). However, this Court has held:
 "The right to appear through privately retained counsel in a civil matter is embedded in Article I, § 10, Ala. Constitution, 1901: `That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party.' It is clear that this `constitutional right to be represented by counsel . . . cannot be unduly impinged.' Loreno v. Ross, 222 Ala. 567, 570, 133 So. 251, 253
(1931). A party to a civil action who is not in default is entitled to be represented by counsel during trial. Whaley v. State, 263 Ala. 191, 82 So.2d 187 (1955). The constitutional right to counsel is a substantial right and, therefore, a denial of that right affirmatively implies injury. State Realty Co. v. Ligon, 218 Ala. 541, 119 So. 672 (1929)."
Ex parte McCain, 804 So.2d 186, 189 (Ala. 2001). The question before this Court, then, is whether under the facts of this case the trial court exceeded its discretion by denying the defendants' motion for a continuance so as to deprive them of their right to be represented by counsel. The trial court in this case granted continuances to allow Blue Cross to amend its complaint five times over the course of two years of litigation. Then, only 33 days before trial was scheduled to begin, the trial court granted the motion of Akin, NeSmith and Universal DME's counsel to withdraw but denied the motion, made at that same time, to continue the trial. The record in this case is unusually voluminous, and the issues are relatively complex and fact intensive, dealing with issues of piercing the corporate veil and successor liability. Akin, NeSmith, and Universal DME renewed their motion to continue one week before the trial and supported their motion with affidavits from three attorneys who stated that they could not ethically undertake representation of these defendants at trial with so little time to prepare. Over the repeated objections of Akin and NeSmith at trial that they could not adequately defend themselves pro' se, the trial court denied their requests for a continuance.
We hold that under the facts of this case the trial court exceeded its discretion by denying the motion for a continuance. Therefore, the order of the trial court denying Akin, NeSmith, and Universal DME's motion for a new trial is reversed, and this case is remanded for a new trial on all claims except the breach-of-contract claim.
 Conclusion
Because Wright Therapy has failed to produce substantial evidence to support its claims of fraud in the inducement, economic duress, or unconscionability in regard to the 2004 agreement, we affirm the trial *Page 710 
court's partial summary judgment in favor of Blue Cross on its breach-of-contract claim against Wright Therapy. However, because the trial court's denial of a continuance unduly impinged Akin, NeSmith, and Universal DME's right to be represented by counsel at trial, we reverse the trial court's judgment as to its denial of their motions for a continuance and for a new trial, and we remand the case for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] Wright Therapy, Akin, NeSmith, and Universal DME also argue that Universal DME, as a corporate entity, was never legally at trial because it was unable to obtain counsel and that all the defendants were denied due process because they were denied a jury trial. However, our reversal of the trial court's order denying the continuance pretermits consideration of the other alleged errors.