Liberty National Life Insurance Company ("Liberty National") brought this action against its former insurance agent, Arthur Clark, for a declaratory judgment, an injunction, and damages arising out of Clark's alleged violations of a noncompetition clause in his employment contract with Liberty National. After hearing the evidence without a jury, the trial court entered a judgment declaring the noncompetition agreement valid and enforceable and awarding Liberty National damages in the *Page 565 
amount of $14,819.61.[1] Clark argues: (1) that the noncompetition agreement, which prohibited him from soliciting Liberty National's policyholders, violates § 8-1-1, Ala. Code 1975; (2) that the agreement was entered into under duress; and (3) that Liberty National did not carry its burden of proof as to damages.
When Clark began working for Liberty National as an insurance agent in November 1981, he was assigned an agency in an area of South Alabama that included parts of Houston, Henry, and Dale Counties. Clark was provided with a list of Liberty National policyholders and was responsible for collecting the premiums on his debit route. His duties also included soliciting and obtaining new policyholders and serving the customers in his area.
On April 1, 1985, Clark entered into a new agent's contract with Liberty National that included a covenant not to compete ("the covenant"). The contract was the same as his previous agent's contract, except for the covenant. The covenant provided, in pertinent part, that for a period of one year after the termination of his employment with Liberty National for whatever reason, Clark would not:
 "Induce, promote, facilitate, bring about, solicit, quote rates for, receive, write, bind[,] broker, transfer or accept replacement or renewal insurance coverage or services for any insurance policy or service sold or serviced by you for the company, or for which you have been or were being compensated by the company, or the existence of which you learned of while in the employ of the company, nor shall you induce or seek to induce the discontinuance or lapse of such insurance policy or service."
Clark terminated his employment with Liberty National on March 4, 1988, and began working as an agent for Prudential Insurance Company. Clark stipulated that he violated the terms of the contract by quoting rates and facilitating and bringing about replacement coverage for Liberty National's policyholders. Clark maintains, however, that he did not solicit these policyholders, but, rather, that they contacted him. This contention does not defeat the application of the covenant, however, because the covenant prohibited Clark from receiving, writing, or accepting replacement or renewal coverage as well as from soliciting such coverage.
Alabama's public policy regarding contracts in restraint of trade is expressed in § 8-1-1, Ala. Code 1975. Contracts restraining employment are disfavored "because they tend not only to deprive the public of efficient service, but [also] . . . to impoverish the individual." James S. Kemper Co. v. Cox Associates, Inc., 434 So.2d 1380, 1384 (Ala. 1983), quotingRobinson v. Computer Servicenters, Inc., 346 So.2d 940, 943
(Ala. 1977).
Section 8-1-1, in pertinent part, states:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) One who sells the goodwill of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
The courts will enforce a covenant not to compete that fits within the exception of § 8-1-1(b) only if:
"1. the employer has a protectable interest;
 "2. the restriction is reasonably related to that interest;
 "3. the restriction is reasonable in time and place; [and] *Page 566 
 "4. the restriction imposes no undue hardship [on the employee]."
DeVoe v. Cheatham, 413 So.2d 1141, 1142 (Ala. 1982). An interest is a protectable interest when an employer possesses "a substantial right in its business sufficiently unique to warrant the type of protection contemplated by [a] noncompetition agreement." DeVoe, 413 So.2d at 1142 (quotingCullman Broadcasting Co. v. Bosley, 373 So.2d 830, 836 (Ala. 1979)). A protectable interest may exist when an employee is "in a position to gain confidential information, [to gain] access to secret lists, or to develop a close relationship with clients." DeVoe, 413 So.2d at 1143; see also Restatement(Second) of Contracts § 188, Comment B (1981).
There is ample evidence in the record to support a finding that Clark developed a close and special relationship with Liberty National's policyholders. Clark was Liberty National's sole contact with policyholders in the territory that he serviced. Clark had frequent and regular contact with many of the policyholders because he collected premiums at their houses each month. Clark knew which persons had Liberty National policies and knew the expiration dates of those policies. Liberty National's relationships with its customers were a valuable asset and it was important to its business to maintain these relationships. The customer acquaintances that Clark gained through his employment at Liberty National could easily be used to Liberty National's detriment by Clark in his subsequent job with Prudential. Clark's information regarding Liberty National's policyholders and the close relationships he developed with the policyholders in his agency clearly constituted protectable interests of Liberty National's. SeeCalhoun v. Brendle, Inc., 502 So.2d 689 (Ala. 1986); James S.Kemper Co. v. Cox Associates, Inc., 434 So.2d 1380 (Ala. 1983).
In James S. Kemper Co., supra, a lumber industry casualty insurance agent signed a noncompetition agreement very similar to the agreement signed by Clark. In Kemper this Court held that the "restrictions in the covenant reasonably relate[d] to the protection of Kemper's interest in a narrow, identifiable group of clients with which [the agent] was involved." Kemper,supra, at 1384. We believe that this is also true for the noncompetition agreement signed by Clark. The covenant was necessary to protect Liberty National's customer relationship interests that had been developed by Clark.
As to the time and place of the restriction, the one-year limitation restricting Clark's solicitation, acceptance, etc., of Liberty National policyholders was reasonable and fair under the circumstances. The territory of a noncompetition agreement may "properly include part of Alabama, all of Alabama, or 'more territory than the State of Alabama,' depending on the circumstances."[2] Kemper, supra, at 1385, quoting Parker v. EbscoIndustries, Inc., 282 Ala. 98, 102, 209 So.2d 383, 386 (1968). The Court in Kemper stated that "there can be no doubt that a two-year period for the [noncompetition] restriction is reasonable." Id. at 1384. The one-year restriction in Clark's contract was reasonable and was sufficiently limited to Liberty National's customers in Clark's territory.
The final consideration is whether the covenant not to compete places an undue hardship on Clark. We believe it does not. Clark was not prohibited from selling insurance, but only from soliciting or accepting replacement insurance from Liberty National's policyholders. See Hoppe v. Preferred Risk MutualInsurance Co., 470 So.2d 1161 (Ala. 1985). Clark was not prohibited from engaging in the "only trade he [knew] and by which he [could] support himself." See Chavers v. Copy ProductsCo., 519 So.2d 942, 945 (Ala. 1988) (undue *Page 567 
hardship placed on copier maintenance and repair person who signed noncompetition agreement prohibiting him from working in field for two years). Clark was free to sell insurance and to solicit new customers, except those customers for whom he had serviced policies or to whom he had sold policies while working for Liberty National. As stated in Hill v. Rice, 259 Ala. 587,67 So.2d 789 (1953), an undue hardship exists when a restriction "imposes on the employee [a] greater restraint than is reasonably necessary to secure to the business of the employer . . . such protection, regard being had to the injury which may result to the public from restraining the breach of the covenant, in the loss of the employee's service and skill and the danger of his becoming a charge on the public." Hill,259 Ala. at 592-93, 67 So.2d at 794. The restriction placed on Clark was reasonably necessary to protect Liberty National's interest and did not place an unreasonable burden on Clark's ability to earn a living selling insurance.
Clark also states an issue based on his contention that he entered into the agent's contract under duress. In his brief, however, he makes no argument on this issue except to cite a case listing the elements required for a prima facie case of economic duress.
Economic duress consists of: "(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." International Paper Co. v.Whilden, 469 So.2d 560, 562 (Ala. 1985). The doctrine of economic duress applies only to "special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto." International Paper, 469 So.2d at 563.
 "The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress."
International Paper, 469 So.2d at 563 (quoting Chouinard v.Chouinard, 568 F.2d 430 (5th Cir. 1978)).
The fact that Liberty National required Clark to sign the new contract in order to continue his employment at Liberty National does not amount to economic duress. Liberty National did not apply any unlawful or unconscionable pressure to force Clark to sign the contract. Clark was able to read the contract and ask any questions he had regarding its contents. There was sufficient and valid consideration for Clark's signing the contract. This consideration was his continued employment at Liberty National under the contract beyond April 1, 1985. SeeDaughtry v. Capital Gas Co., 285 Ala. 89, 92-93, 229 So.2d 480,483 (1969). We find no merit in Clark's argument that the agent's contract was signed under duress.
Clark's final argument is that Liberty National did not carry its burden of proof as to the damages it claimed as a result of Clark's breach of the covenant not to compete.
In a breach of contract action, the ordinary measure of damages is "an amount sufficient to return the plaintiff to the position he would have occupied had the breach not occurred."Aldridge v. Dolbeer, 567 So.2d 1267, 1269 (Ala. 1990). Liberty National bears the burden of proving the amount of damages it is entitled to as a result of the breaches by Clark. James S.Kemper Co. v. Cox Associates, Inc., 434 So.2d 1380 (Ala. 1983).
The evidence produced by Liberty National must be sufficient evidence of its loss "to allow the factfinder to calculate the damages without operating from guesswork." Aldridge, 567 So.2d at 1270.
The record clearly indicates that Clark breached the covenant on many occasions, causing many of Liberty National's policyholders to change their coverage from Liberty *Page 568 
National to Prudential. Clark was compensated for each Liberty National policy he replaced with a Prudential policy.
At trial, Liberty National's actuary testified as to the amount of loss suffered by Liberty National as a result of Clark's breaches of the noncompetition agreement. In calculating the loss for each policy that was replaced by Clark during the one-year noncompetition period, Liberty National calculated its lost profit and multiplied this loss by a company-wide factor that approximated the loss due to the lapse of the policy. The lost profit consisted of underwriting income, investment income, and renewal commissions that Liberty National became entitled to when an agent left the company. Other factors that were considered in the calculation of damages included the length of time the policyholder had maintained the policy and Liberty National's persistency rate, reflecting the probability that a policyholder will remain with the company. Also, Liberty National's calculation of future payments was discounted by interest and a persistency factor.
The trial court, after hearing ore tenus evidence, awarded Liberty National damages totaling $14,819.61. The trial court properly excluded from its calculations certain policies for which Liberty National had claimed damages: policies that were not replaced, although initial steps to replace them had been taken; policies that were replaced beyond the one-year restriction; and policies belonging to Clark and his family.
After careful review of the record, we believe that Liberty National did carry its burden of proof as to damages. The formula used by Liberty National was reasonable and fair and reflected the loss suffered by Liberty National as a result of Clark's breaches of the covenant not to compete. Clark argues that when calculating damages Liberty National did not take into account such factors as a customer's loyalty to his agent, Clark's good relationship with his customers, and the fact that Clark's replacement did not have as good a relationship with the customers as Clark had. It is important to note that these are the very things that the noncompetition agreement protects Liberty National from and are not factors by which Clark is entitled to have the trier of fact decrease the amount of damages.
Because this case was tried ore tenus, our standard of review is that we will "presume that the trial court's judgment is correct" and will reverse it "only if the judgment is found to be plainly and palpably wrong after a consideration of all of the evidence and after making all inferences that can logically be made from the evidence." King v. Travelers Insurance Co.,513 So.2d 1023, 1026 (Ala. 1987). We believe that Liberty National presented sufficient evidence to support the trial court's award of damages, and we will not disturb the award on appeal. Therefore, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] The court did not grant any injunctive relief to Liberty, presumably because the one-year noncompetition period had already expired.
[2] The language of § 8-1-1(b), requiring restrictions "within a specified county, city, or part thereof," was long ago construed by this Court as including "counties," and thereby the entire state in appropriate circumstances. Even more, the statute's application was held not to be "limited to the boundary lines of Alabama." Parker, supra. See also Rush v.Newsom Exterminators, Inc., 261 Ala. 610, 75 So.2d 112 (1954); and McNeel Marble Co. v. Robinette, 259 Ala. 66, 65 So.2d 221
(1953).