Lanzy WILSON, Plaintiff–Appellant,

v.

CSX TRANSPORTATION, INC., Defendant–Appellee.

No. 94–6475.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1995.

Decided March 6, 1996. *

* This decision was originally issued as an "unpublished decision" filed on March 6, 1996. On May 7, 1996, the court designated the opinion as one recommended for full-text publication.

E.J. Leizerman (argued and briefed), Leizerman, Williams & Reynolds, Toledo, OH, for Plaintiff–Appellant.

John Knox Walkup, Wayne L. Robbins, Jr. (argued and briefed), Gullett, Sanford, Robinson & Martin, Nashville, TN, for Defendant–Appellee.

Before: MERRITT, Chief Judge; BATCHELDER, Circuit Judge; DOWD,** District Judge.

MERRITT, Chief Judge.

Lanzy Wilson, the plaintiff, brought this suit under the Federal Employers' Liability Act, 45 U.S.C. §§ 51—60 (hereinafter "FELA"), against his employer, CSX Transportation, seeking damages for personal injuries. The District Court granted summary judgment for the Defendant. For the reasons stated below, we reverse the District Court's granting of summary judgment, and remand the case for further proceedings in light of this opinion.

## I. Background

Lanzy Wilson began working for CSX Transportation in October of 1973. Prior to September, 1991, he made a claim against the Company for lung disease which he alleged was caused by dust he inhaled on the job. The claim was settled in September, 1991, when he received $13,500 in exchange for signing a release form. The release form stated, in part:

I, *Lanzy J. Wilson*, ... hereby acknowledge receipt of ... *$13,500.00* [ ] from ... CSX TRANSPORTATION, INC. in full settlement and satisfaction of all claims, actions, demands and causes of action as set for below ..., and in consideration of said payment hereby RELEASE AND FOREVER DISCHARGE CSX TRANS-

** The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

PORTATION, INC .... of and from all liability for all claims for occupational disease or personal injury now known to have resulted or suspected to have resulted from my employment with CSXT, and also for known and unknown, manifested and unmanifested, suspected and unanticipated diseases or injuries to the respiratory system, including cancer of the respiratory system, arising from or contributed to by the inhalation or ingestion of any and all substances including dusts and fumes of any type, while employed by CSXT. The parties agree that a portion of the monies paid for this RELEASE AGREEMENT is for risk, fear and/or possible future manifestation of such injury or disease to the respiratory system as described in this paragraph. Such claims include claims asserted in that certain *Civil Action No. CV– 87–6219 ... styled "Lanzy J. Wilson, Plaintiff vs. CSX Transportation, Inc., Defendant,"* which action is to be dismissed with prejudice.

It is the intent of the parties to release any and all claims described herein against those herein named for personal injury and occupational disease, sustained by THE UNDERSIGNED, however incurred, which might form the basis of any action under the Federal Employers' Liability Act, the Boiler Inspection Act, or any other law or laws, either state or federal, or any action at common law.... Such claims are by this understanding and agreement expressly released.

In making this RELEASE AGREE-MENT, THE UNDERSIGNED declares that I have relied wholly upon my own judgement; that no representations about the nature and extent of my present or future condition, disabilities or damages made by any physician, attorney or agent of those hereby released, nor any representation regarding the nature and extent of legal liabilities of those hereby released, have induced me to make this settlement; that in determining the amount of settlement there has been taken into consideration not only my ascertained condition, disabilities and damages, but also that my present condition is permanent and may be progressive and recovery therefrom uncer-

tain and indefinite, so that consequences may not now be fully known and could be more numerous and serious than now believed and that consequences not now anticipated may result.

. . . .

THE UNDERSIGNED hereby declares that I have executed this RELEASE AGREEMENT upon the advice and approval of my attorney and that I have had this RELEASE AGREEMENT explained to me by my attorney, that I know and understand the contents hereof and sign the same as my own free act with full knowledge that the effect hereof shall be such as to extinguish, and I hereby declare extinguished, now and forever, any and all claims described in this RELEASE AGREEMENT.

After signing the release, the Plaintiff continued to work for CSX. Mr. Wilson claims that after his return to work he made repeated requests to his supervisor for assignments which would not expose him to rock dust without protection. His supervisor refused, allegedly stating that he did not care about Mr. Wilson's medical problems. Another CSX foreman, Ronnie Lackey, indicated in his affidavit that he offered to switch jobs with the Plaintiff, but the supervisor refused. During 1993 and early 1994, the Plaintiff required hospitalization each time he was exposed to rock dust. He testified at his deposition that he was never given more protection than a paper mask, if that, and that he had seen other workers with more advanced protective devices. The Plaintiff stated that he complied with the requests of his supervisor because he feared that if he did not he would lose his job.

As a result of these problems, Mr. Wilson brought a new suit against his employer, the instant action. His first claim alleged that CSX negligently failed to provide him with a safe place to work, failed to provide him with adequate and sufficient protections against and warning about the dangers of the employment, and negligently required him to continue to work in the same capacity and under the same conditions after CSX knew of his medical condition and after the execution

of the release. His second claim alleged that the release was the product of a "mutual mistake of fact" as to the serious and permanent nature of the Plaintiff's injuries and should therefore be rescinded. During the course of the litigation of this case, Plaintiff also put forth the theory that the release was inapplicable because his claim was based on new injuries, which were not covered by the release, because releases which cover future conduct violate § 55 of FELA and are to that extent void. The District Court granted Defendant's motion for summary judgment.

## II. Analysis

The District Court opinion focuses primarily on the lack of "mutual mistake" because that was one of the two issues raised by the Plaintiff in the initial complaint. The District Court held, correctly, that Plaintiff failed to prove any "mutual mistake of fact." Under FELA, a mutual mistake of fact is sufficient to avoid a release only when the mistake goes to the nature of the injury, not the expected course of healing, and when the mistaken belief is held by both parties. *Manis v. CSX Transp., Inc.*, 806 F.Supp. 177, 179 (N.D.Ohio 1992). Plaintiff failed to allege any mistake on CSX's part. Thus, the "mutual mistake of fact" claim provides no support for Plaintiff's attempt to avoid the release.

The next question to be addressed, then, is whether or not a release governed by FELA may apply to future conduct. From the record before us, it is not clear how much the Plaintiff developed this issue below or on what basis the District Court made its limited finding on this issue. However, because it is a question of law which was fully developed before this court and which, Defendants concede, was not waived, we will review it *de novo*. *Cook v. American Steamship Co.*, 53 F.3d 733, 738 (6th Cir.1995).

The validity of a release in a FELA action is governed by federal rather than state law. *Maynard v. Durham S. Ry. Co.*, 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed.2d 486 (1961). Section 55 of FELA states that,

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable a common carrier to exempt itself from any liability created by this chapter, shall to that extent be void
. . . .

The Supreme Court has held that railroads may not obtain releases from employees which enable the railroad to exempt itself from liability. *Philadelphia, Baltimore & Washington R.R. Co. v. Schubert*, 224 U.S. 603, 612, 32 S.Ct. 589, 591–92, 56 L.Ed. 911 (1912) ("[S]uch an agreement is one for immunity in the described event, and as such it falls under the condemnation of the statute."); *see also Taylor v. Wells Fargo & Co.*, 220 F. 796, 797 (1915) ("For such a carrier to be able ... to exempt itself from the liability created by the statute ... would be in plain contravention of the explicit provision of section 5 of that statute [now § 55]."); *Cordiano v. Consolidated Rail Corp.*, 87 Ohio App.3d 398, 401, 622 N.E.2d 406 (1993) ("[T]he general release is not effective as to any future hearing loss sustained as a result of a *new* accident.") (emphasis added).

Permitting employers to obtain releases exempting them from future conduct would enable them to treat their employees with impunity. Doing so would contravene both the purpose of FELA and the purpose of § 55. The purpose of FELA is to give railway workers a right to recover fair compensation for injuries negligently caused by their employers. *Dice v. Akron, Canton & Youngstown R. Co.*, 342 U.S. 359, 362, 72 S.Ct. 312, 314–15, 96 L.Ed. 398 (1952). By including § 55, Congress was seeking to prevent employers from undermining the liability created by the statute. *Philadelphia*, 224 U.S. at 609, 32 S.Ct. at 590. We therefore find that the release signed by Mr. Wilson does not absolve CSX from liability for new injuries sustained by him after its execution. We find that the release applies to injuries suffered by Mr. Wilson before he signed the release, but not to new injuries which occurred after it was signed.

Thus, in order to survive summary judgment, Mr. Wilson must raise a genuine issue of material fact as to whether he suffered "new" injuries after signing the re-

746

lease. We review a grant of summary judgment *de novo. Henegar v. Banta,* 27 F.3d 223, 225 (6th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 664, 130 L.Ed.2d 599 (1994). Although the initial complaint filed by Mr. Wilson does not allege that the injuries which form the basis of this suit were inflicted after he signed the release, Defendant concedes that during the course of the litigation in this case it became apparent that Mr. Wilson's theory was that the release should not apply because he was suing for post-release injuries. Defendant alleges that any post-release change in Plaintiff's condition was not due to new injuries, but rather, to the expected progression of his pre-existing disease. Because the District Court relied on the applicability of the release, it was not necessary for it to reach this issue. Our finding as to the release, however, necessitates a more lengthy discussion of the issue.

The medical testimony relating to whether or not these post-September 1991 exposures caused new injuries to the Plaintiff is somewhat confusing. Dr. James Hayes testified that,

Q. Doctor, Mr. Leizerman asked you a question about reinjury. I'm going to draw a distinction for you. when you say that each exposure to dust created a "reinjury," are you saying that each exposure to dust created new problems, or each exposure to dust further exacerbated the old problems.

A. I think there is probably reasonable medical probability of both. The inhalation of the dust can exacerbate an underlying asthma process, which would be an old problem, but I think that the inhalation of dust results in repeated injury to the lungs in the same way that repeated inhalation of asbestos dust, for example, adds new injury on top of old injury.

Jt.App. at 38–39.

Another expert, Doctor Jon Jay Tumen was asked,

Q: ... Every time he went out to work in dust, are we having a series of new injuries or exacerbation of old injuries?

A: That is impossible to answer.

Jt.App. at 25.

Yet another expert, Dr. Ben Alper, testified that,

Q: Doctor, with respect to the permanent chronic obstructive pulmonary disorder, each time he went back out there and exposed himself to dust exposure was he creating a new reinjury to himself?

A: There's certainly no reason to think otherwise. To what extent or how rapid is a matter of conjecture.

Q: But it is your opinion, to a reasonable degree of medical probability, that each time it is another new injury to him?

A: It would be like—I can't say each cigarette makes it worse, but the overall pattern, yes.

Jt.App. at 33. Later on, however, he was asked, "When he asked you the question about reinjury, are you saying that each time he was exposed to dust there was a new condition created, or are you saying that the old condition was made worse?" He replied, "I would say that the old condition was made worse. There's no reason to suspect a new condition." Jt.App. at 33 (sheet stapled to back of page).

■ In deciding whether a genuine issue of material fact has been raised as to an issue, this Court must make all reasonable inferences in favor of the non-moving party, in this case, Mr. Wilson. Fed.R.Civ.P. 56; *Henegar,* 27 F.3d at 225 (*citing Adickes v. S.H. Kress Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). When viewed in that light, we believe that Mr. Wilson has met his burden and that a genuine issue of material fact exists.

### III. CONCLUSION

For the foregoing reasons, the decision of the District Court granting Defendant's motion for summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.