723 So.2d 83 (1998)
Tommy R. STEPHENS
v.
ALABAMA STATE DOCKS TERMINAL RAILWAY.
2970563.
Court of Civil Appeals of Alabama.
July 24, 1998.
Rehearing Denied October 16, 1998.
*84 J. Harry Blalock, Birmingham, for appellant.
Charles L. Miller, Jr., Mobile, for appellee.
THOMPSON, Judge.
Tommy R. Stephens sued his employer, Alabama State Docks Terminal Railway (the "Railway"), under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("FELA"). In his complaint, Stephens alleged that he was injured on February 4, 1992, when he fell in the "engine room" after slipping on some oil and water which was standing on the floor. In its amended answer to Stephens's complaint, the Railway claimed that Stephens had released it from all claims related to the injury for which he was seeking damages.
On August 27, 1997, the Railway moved for a summary judgment, arguing that Stephens's injury was related to a previous on-the-job accident that had occurred in 1986. The Railway argued that it had compensated Stephens for that injury and that in 1987 Stephens had executed a release of the Railway from all future consequences of that injury. In support of its motion for a summary judgment, the Railway submitted portions of the deposition of Dr. Harry A. Luscher, Jr., and a copy of the release executed by Stephens.
In his opposition to the Railway's motion for a summary judgment, Stephens argued that his 1992 fall caused a second injury, that it aggravated his earlier injury, and that he had signed the 1987 release under economic duress. In support of his opposition to the motion for a summary judgment, Stephens submitted his affidavit stating that a supervisor had threatened to fire him if he did not sign the release. Stephens also submitted *85 the deposition testimony of several doctors who stated that his 1992 fall may have aggravated his earlier injury so that the injury became symptomatic.
The Railway moved to strike Stephens's affidavit. In its motion, the Railway argued that Stephens's testimony in his 1997 affidavit was an attempt to create a question of fact by contradicting his earlier sworn deposition testimony, in contravention of well-settled caselaw.
On October 9, 1997, the trial court denied the Railway's motion to strike Stephens's 1997 affidavit, but stated in its order that it would consider only admissible evidence in ruling on the Railway's motion for a summary judgment. Also on October 9, 1997, the trial court entered a summary judgment in favor of the Railway. In that judgment, the trial court found that Stephens had released the Railway from liability for his 1986 injury "with the full knowledge that the injuries may become symptomatic in the future." The trial court also stated that it found no evidence that Stephens had signed the release under duress.
Stephens moved to alter, amend, or vacate the summary judgment. The trial court denied that motion and Stephens appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7, Ala.Code 1975.
A motion for summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). On a motion for a summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990). After the moving party makes its prima facie showing, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). The nonmoving party is required to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Stephens argues that the trial court erred in ruling against his claim of economic duress.
"Economic duress consists of: `(1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer.' International Paper Co. v. Whilden, 469 So.2d 560, 562 (Ala. 1985). The doctrine of economic duress applies only to `special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto.' International Paper, 469 So.2d at 563.
"`The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress.'
"International Paper, 469 So.2d at 563, (quoting Chouinard v. Chouinard, 568 F.2d 430 (5th Cir.1978))."
Clark v. Liberty Nat'l Life Ins. Co., 592 So.2d 564, 567 (Ala.1992).
In entering its summary judgment, the trial court stated that Stephens had presented "no evidence" in support of his contention that he had signed the release under duress. In his affidavit submitted in support of his opposition to the motion for a summary judgment, Stephens stated that Allen McKinsey, the superintendent of the Railway, called Stephens to his office and told Stephens that if he did not sign the release his employment would be terminated. Stephens's affidavit is *86 dated September 11, 1997. Approximately two and a half years earlier, on March 21, 1995, Stephens had testified at his deposition that he did not remember being threatened when he signed the release.
"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313, 317 (Ala.1992) (emphasis added). Stephens's testimony in his affidavit clearly contradicts his earlier sworn testimony; he offered no explanation for that contradiction. Stephens can not use his affidavit as evidence to create a question of fact. Stephens presented no evidence, other than his affidavit, to indicate that he signed the release under duress. The trial court correctly refused to consider Stephens's affidavit as admissible evidence of economic duress.
Stephens next argues that the trial court applied the release to absolve the Railway of liability for future negligence and that it erred in doing so. In its judgment, the trial court found that Stephens had suffered a second accident that affected the same area of his back had been injured in his 1986 accident. The trial court then held that the back injury for which he sought compensation was related to the 1986 injuries. The trial court specifically found that the 1987 release executed by Stephens was unambiguous and worked to prevent Stephens from recovering for that injury.
The determination of whether the document is ambiguous is a question of law for a court to determine. Austin v. Cox, 523 So.2d 376 (Ala.1988). It is well settled that if the language of a release is plain and unambiguous, it is given effect by determining the intent of the parties from the four corners of the document itself. Housing Authority of the Birmingham Dist. v. Paul Davis Systems, Inc., of Birmingham North & East, 701 So.2d 32 (Ala.Civ.App.1997). We agree with the trial court's holding that the release executed by Stephens is clear and unambiguous; therefore, we must look to the language of the release to determine the intentions of the parties.
The release Stephens executed in 1987 provides in part:
"It is the full intent of this release and settlement that the same is to release any and all claims which I have heretofore made or which I could hereafter make which arise out of or are in any way associated with the accident [of 1986].

"To procure the payment of the above said sum, I do hereby declare that no representations about the nature and extent of any injuries, disabilities or damages made by any physician, attorney or agent of any party hereby released, nor any representations regarding the nature and extent of legal liability or financial responsibility of any of the parties hereby released have induced me to make this settlement; that in determining said sum there has been taken into consideration not only the ascertained injuries, disabilities and damages, but also the possibility that the injuries sustained may be permanent and progressive and recovery therefore uncertain and indefinite, so that consequences not now anticipated may result from the said accident, that conditions or results of the injuries not known may be symptomatic in the future, and in arriving at the sum for which this release is executed, I have taken into account the known injuries and have taken into account the fact that I have been told that I have a permanent injury to my back, and the doctor expressing such opinion is Dr. Harry A. Luscher, Sr. [sic], orthopedic surgeon."
(Emphasis added.)
We do not agree with the trial court that the release applies to prevent recovery for aggravation of the original injury that is caused by a subsequent on-the-job accident. The terms of the release clearly apply only to the injury sustained as a result of the 1986 accident. The injury for which Stephens now seeks compensation is from the alleged new injury, or aggravation of the old injury, that resulted from his 1992 fall. The clear language of the release does not absolve the Railway of liability for any accidents *87 or injuries other than the one specifically mentioned in the release. Further, under FELA, a valid release "must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him." Babbitt v. Norfolk & Western Ry., 104 F.3d 89, 93 (6th Cir.1997).
"Permitting employers to obtain releases exempting them from future conduct would enable them to treat their employees with impunity. Doing so would contravene both the purpose of FELA and the purpose of § 55.[[1]] The purpose of FELA is to give railway workers a right to recover fair compensation for injuries negligently caused by their employers. By including § 55, Congress was seeking to prevent employers from undermining the liability created by the statute. We therefore find that the release signed by [the plaintiff] does not absolve [the defendant employer] from liability for new injuries sustained by him after its execution. We find that the release applies to injuries suffered by [the plaintiff] before he signed the release, but not to new injuries which occurred after it was signed."
Wilson v. CSX Transp., Inc., 83 F.3d 742, 745 (6th Cir. 1996) (citations omitted).
The court in Wilson, noting that it must view the evidence in a light most favorable to the nonmovant, reversed the trial court's summary judgment entered under facts similar to those in this case. In Wilson, the plaintiff made a claim for a job-related lung disease after being exposed to rock dust at the workplace; he settled with his employer and signed a release. After the plaintiff returned to work, the employer refused to provide adequate protection and the plaintiff continued to be exposed to the rock dust that had caused his lung disease. The plaintiff's doctors testified that the plaintiff's continued exposure to the rock dust exacerbated the lung disease for which the plaintiff had signed a release. The court held that the release executed by the plaintiff did not apply to the employer's future negligence and that a material factual issue existed as to whether the plaintiff had suffered a "new" injury after he signed the release. See Wilson v. CSX Transp., Inc., 83 F.3d 742 (6th Cir.1996).
Under its own clear terms, and under caselaw, we conclude that the release in this case does not apply to prevent the Railway's being held liable for negligent actions that might occur after the execution of the release. Thus, Stephens could defeat the Railway's summary judgment motion by presenting substantial evidence creating a genuine issue of fact as to whether he suffered a "new" injury as a result of his 1992 fall.
Stephens argues that the medical testimony of one of his doctors creates that question of fact as to whether the 1992 fall caused a new injury, and he also argues that the fall aggravated his earlier injury. Dr. McAndrew testified that an MRI taken in 1994 reflected a herniated disc that was slightly different from the injury to Stephens's back than was diagnosed following a CT scan after the 1986 injury. However, Dr. McAndrew later testified that a CT scan was not as accurate as the MRI and that he felt the two tests were consistent. Dr. McAndrew specifically stated that, given the results of the two tests, he did not believe the injury to Stephens's back was a result of the 1992 fall.
Dr. Luscher testified that he treated Stephens in June 1993, approximately one and a half years after his 1992 fall; at that time, Dr. Luscher recommended that Stephens could return to work. When questioned about the MRI performed later by another doctor, Dr. Luscher testified that he did not believe the 1994 MRI was consistent with the 1986 CT scan. Stephens argues that because *88 the MRI reflected a herniated disc that, according to Dr. Luscher's testimony, was inconsistent with the 1986 CT scan results, the herniated disc must have occurred when he fell in 1992. However, that conclusion does not necessarily follow; the herniated disc could have occurred at any time after the 1986 CT scan. Further, Dr. Luscher testified that the herniated disc revealed in the 1994 MRI was not the source of Stephens's back pain. Dr. Luscher testified that Stephens's back pain was caused by continued lumbar strain that was the result of the previous injury.
All three doctors who testified stated that the 1992 fall may have aggravated the symptoms of the earlier injury. The aggravation of a preexisting condition is compensable under FELA. See generally Sauer v. Burlington Northern R.R., 106 F.3d 1490 (10th Cir.1996); Stevens v. Bangor & Aroostook R.R., 97 F.3d 594 (1st Cir.1996); Jordan v. Atchison, Topeka & Santa Fe Ry., 934 F.2d 225 (9th Cir.1991). Stephens did not present substantial evidence indicating that he had suffered a new injury. However, because this court must view the evidence in a light most favorable to the nonmoving party, we must reverse the summary judgment, because Stephens did present substantial evidence creating a genuine issue of fact as to whether the 1992 fall aggravated his earlier injury.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur.
MONROE, J., concurs in the result.
MONROE, Judge, concurring in the result.
I agree that the summary judgment entered in favor of the railway must be reversed because Stephens presented substantial evidence of genuine issues of material fact regarding the cause and nature of his latest injury.
That said, I do not believe that this court's role is to weigh that evidence to determine that the latest accident aggravated Stephens's existing injury and did not cause a new injury. Such a determination must be left to the trier of fact. Therefore, while I agree with the result reached in the main opinion, I believe that it goes too far toward weighing the evidence and dictating a final outcome to the trial court. For that reason, I must concur in the result.
NOTES
[1] 45 U.S.C. § 55 provides: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."