[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14306

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-01510-CV-5-CLS

EDWIN L. EDWARDS, *et al.*,

Plaintiff-Appellant,

versus

KIA MOTORS OF AMERICA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 17, 2007)**

Before HULL and MARCUS, Circuit Judges, and BARZILAY,* Judge.

Barzilay, Judge:

This appeal arises from a disagreement concerning the application of the

---

*Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting by designation.

Alabama Motor Vehicle Franchise Act ("Franchise Act") to a retrospective[1] mutual release agreement (the "Release") between Appellants Edwin Edwards and ELL 12[2] and Appellee Kia Motors America, Inc. ("KMA"). *See* Ala. Code § 8-20-11. Appellants seek to recover damages under the Franchise Act[3] for KMA's alleged failure to perform certain contractual obligations, despite the fact that Edwards signed and executed the Release, which relinquished all possible claims against KMA. Appellants also claim that the Release is voidable because KMA's conduct constituted economic duress, and that their common law claims fall under the exceptions to the Release and should not be dismissed.

According to the Appellants, the language of § 8-20-11 and the remedial purpose of the Franchise Act permits automobile dealers to bring claims against large automobile manufacturers, even after executing a bonafide retrospective release agreement. KMA argues, however, that the Franchise Act does not provide a remedy for such releases because the statute applies only to prospective release/waiver agreements (i.e., the manufacturer attempts to contract out of

---

[1] For purposes of this opinion, the term "retrospective release" refers to an instrument that relinquishes all viable claims that a franchisee automobile dealer may bring against the franchisor manufacturer executed for a specific known purpose as opposed to a prospective release required as a condition for becoming a dealer.

[2] ELL 12 is a limited liability company.

[3] Appellants claim violations of Ala. Code §§ 8-20-4(1)(d), (3)(a) & (u) and 8-20-7(a), (b), (d).

liability at the inception of the business agreement).  Furthermore, prohibiting the enforcement of retrospective release agreements would essentially nullify any good faith settlement of claims between automotive dealers and manufacturers subject to the Franchise Act.

After thorough review of the record and oral argument, this Court cannot determine with any certainty whether the relevant provisions of the Franchise Act operate to prohibit enforcement of the Release.  Since the resolution of this case turns on the interpretation of unsettled Alabama law, we certify this issue to the Alabama Supreme Court.  *See Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1187 (11th Cir. 2006); *Tobin v. Mich. Mut. Ins. Co.*, 398 F.3d 1267, 1274 (11th Cir. 2005).  As to the remaining issues, we affirm.

## I. Background

In 2002, Edwards contacted KMA and expressed interest in establishing a Kia automobile dealership in Opelika, Alabama, to which KMA agreed, provided that Edwards first purchase a struggling dealership in Huntsville, Alabama. Edwards consented and entered into a Kia Dealer Sales & Service Agreement ("Dealer Agreement") with KMA as owner of the Kia dealership in Huntsville, Alabama in August 2002.  To operate the Huntsville dealership, Edwards formed a limited liability company called ELL 12, which he owned exclusively.

3

Within a year, Edwards became dissatisfied with KMA because of its alleged failure to uphold certain contractual obligations. For instance, "(1) [KMA] was sending a large quantity of unpopular, slow-selling Kia models to his Huntsville dealership, but not sending sufficient numbers of the popular, fast-selling models; (2) [KMA] had failed to reimburse ELL 12 for warranty services performed by the dealership's mechanics; (3) [KMA] had failed to credit ELL 12 for sales of certain new vehicles; (4) [KMA] had failed to reimburse ELL 12 for advertising costs; (5) [KMA] had failed to award Edwards a dealership in Opelika, Alabama, as promised; and (6) [KMA] had failed to identify a prospective purchaser for the (still) under-performing Huntsville dealership, as promised." *Edwards v. KIA Motors Am., Inc.*, No. CV-05-S-1510-NE, slip op. at 5 (N.D. Ala. May 18, 2006); *see* Compl. ¶¶ 16, 17, 19, 20, 22.

After sustaining significant losses,[4] Edwards identified a potential buyer, Fletcher Automotive No. 18, LLC ("Fletcher"), and in October 2004, they reached a tentative agreement for the sale of the Huntsville dealership. One of the terms in Fletcher's agreement with Edwards required that the sale be completed by December 31, 2004. However, pursuant to the Dealer Agreement, Edwards was required to obtain KMA's approval before selling the Huntsville dealership to

---

[4] Appellants suffered net operating losses of $209,047 and $405,690 in 2002 and 2003, respectively.

4

Fletcher. *See* Evidentiary Submission Filed In Support of Def. KIA Motors Am., Inc.'s Mot. For Partial Summary J. Ex. 3 art. XI. Upon approaching KMA for approval of the sale, KMA proffered the Release to Edwards.[5] Skeptical of the Release's terms, Edwards consulted with an attorney, who sent a letter on his behalf asking KMA whether its approval of the sale was contingent upon Edwards' executing the Release. According to Edwards, KMA never responded to the letter. Because of the impending deadline to close the sale, Edwards executed the Release and sold the Huntsville dealership to Fletcher.

On July 13, 2005, Edwards and ELL 12 commenced this action in United States District Court for the Northern District of Alabama, notwithstanding the

---

[5] In relevant part, the Release provides:

DEALER, DEALER OWNER(S) and KMA do, . . . release, acquit and forever discharge one another of and from all claims which have arisen or may ever arise, demands and causes of action arising from, related to, or in any manner connected with the sale and service of Kia Products, including, without limitation, the Dealer Agreement, and from any and all claims for damages, related to or in any manner connected with the Dealer Agreement or the parties' business relationship.
. . . .
[I]t is understood and agreed that this agreement includes all claims of every nature in kind whatsoever, known or unknown, suspected or unsuspected, arising out of, in connection with, in consequence of, in any way involving, or related to, the Dealer Agreement or the business relationship between or among DEALER, DEALER OWNER(S) and KMA from the beginning of the world through and including the date of the Closing.

Evidentiary Submission Filed In Support of Def. KIA Motors Am., Inc.'s Mot. For Partial Summary J. Ex. 7 at 1-2.

5

terms of the Release. Edwards sought money damages and equitable relief for (1) violations of the Franchise Act and (2) common law claims of fraud, fraudulent suppression of material facts, breach of covenant of good faith and fair dealing, negligence and wantonness, and negligent and wanton supervision. Alternatively, Edwards also claimed that the Release was voidable because it was executed under economic duress. KMA filed a motion for partial summary judgment, which the district court granted. Edwards and ELL 12 appeal.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over appeals from the Northern District of Alabama pursuant to 28 U.S.C. § 1291. The Court reviews a district court's grant of summary judgment *de novo*. *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1222 (11th Cir. 2004). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1301 (11th Cir. 2003).

6

## III. Discussion

### A. Application of the Franchise Act to the Release

Although the district court decided this case based on the distinction

between the terms "waiver" and "release," *see Edwards*, No. CV-05-S-1510-NE,

slip op. at 12, during oral argument, both parties conceded that the terms "waiver

and "release" can be synonymous.[6]  Therefore, the Court need not review the

district court's reasoning on that particular issue.  Instead, the relevant inquiry

concerns whether the Franchise Act permits an automobile dealer to bring a claim

under the Act, despite the fact that both parties already executed a mutual release

agreement in which the dealer relinquished all existing legal claims against the

manufacturer in exchange for valid consideration.

"As in any case of statutory construction, our analysis begins with the

language of the statute."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119

S. Ct. 755, 760 (1999) (quotations & citation omitted).  However, "even when the

plain meaning [does] not produce absurd results but merely an unreasonable one

plainly at variance with the policy of the legislation as a whole this Court has

---

[6] For purposes of clarification, "[a] release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised."  66 Am. Jur. 2d *Release* § 1 (footnote omitted).  "A waiver . . . is the voluntary and intentional relinquishment of a known right, claim, or privilege."  28 Am. Jur. 2d *Estoppel and Waiver* § 197 (footnote omitted).  "Waiver is unilateral in character, and one party acting alone who abandons his or her rights is sufficient to create waiver."  *Id.* (footnote omitted).

7

[frequently] followed that purpose, rather than the literal words." *United States v. Second Nat'l Bank*, 502 F.2d 535, 541 (5th Cir. 1974) (second brackets in original) (quotations & citations omitted).[7] The remedies section of the Franchise Act provides in relevant part that:

> Notwithstanding the terms, provisions, or conditions of any dealer agreement or franchise or the terms or provisions of *any waiver*, and notwithstanding any other legal remedies available, any person who is injured in his business or property by a violation of this chapter by the commission of any unfair and deceptive trade practices, or because he refuses to accede to a proposal for an agreement which, if consummated, would be in violation of this chapter, may bring a civil action in a court of competent jurisdiction in this state to enjoin further violations, to recover the damages sustained by him together with the costs of the suit, including a reasonable attorney's fee.

§ 8-20-11 (emphasis added). Appellants contend that the term "any waiver" should be construed liberally because the word "any" suggests that the Act encompasses a variety of waivers, including retrospective releases. Moreover, the remedial purpose of the statute requires that its terms be applied broadly. *See, e.g.*, *Ayers v. Wolfinbarger*, 491 F.2d 8, 16 (5th Cir. 1974). The Alabama legislature articulated the remedial nature of the statute as follows:

> The legislature finds and declares that the distribution and sale of motor vehicles within this state vitally affect the general economy of the state and the public interest and the public welfare, and that in

---

[7] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of former Fifth Circuit issued prior to October 1, 1981, are binding precedent on federal courts within Eleventh Circuit).

order to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers, distributors, dealers and their representatives and to regulate the dealings between manufacturers and distributors or wholesalers and their dealers in order to prevent fraud and other abuses upon the citizens of this state and to protect and preserve the investments and properties of the citizens of this state.

§ 8-20-2; *see Tittle v. Steel City Oldsmobile GMC Truck, Inc.*, 544 So. 2d 883, 887 (Ala. 1989).

KMA argues, however, that Alabama law expressly mandates that "[a]ll receipts, *releases* and discharges in writing . . . must have effect according to their terms and the intentions of the parties thereto." Ala. Code § 12-21-109 (emphasis added); *see Williams v. Nolin*, 484 So. 2d 428, 429 (Ala. 1986); *Jehle-Slauson Constr. Co. v. Hood-Rich, Architects & Consulting Eng'rs*, 435 So. 2d 716, 719-20 (Ala. 1983). In addition, KMA claims that the "[u]nfair and deceptive trade practices" section of the Franchise Act, § 8-20-4, restricts the remedies outlined in the statute to dealers that have executed prospective releases. Section 8-20-4 states that:

Notwithstanding the terms, provisions, or conditions of any dealer agreement or franchise or the terms or provisions of any waiver, prior to the termination, cancellation, or nonrenewal of any dealer agreement or franchise, the following acts or conduct shall constitute unfair and deceptive trade practices: . . . . (3) For any manufacturer, factory branch, factory representative, distributor, or wholesaler, distributor branch or distributor representative: . . . . (m) To *prospectively assent* to a *release*, assignment, novation, *waiver*, or

9

estoppel which would relieve any person from any liability or obligation under this chapter or to require any controversy between a new motor vehicle dealer and a manufacturer to be referred to any person other than the duly constituted courts of this state or the United States, if the referral would be binding on the new motor vehicle dealer.

§ 8-20-4 (emphasis added). In other words, § 8-20-4(3)(m) limits the application of the term "any waiver" in § 8-20-11 to those situations where a manufacturer has induced a potential franchisee dealer to waive or release all future claims in the initial dealership agreement. Since there is no similar statutory reference to retrospective releases, KMA contends that the Court should enforce the Release according to its terms.

Taken together, § 8-20-11, § 8-20-4(3)(m), and the remedial purpose of the Franchise Act do not provide sufficient guidance to determine whether the Release should bar Appellants' claims against KMA. Under § 8-20-11, the term "any waiver" could be interpreted to include retrospective release agreements since the terms are often synonymous. Section 8-20-4(3)(m) provides no guidance on the issue of retrospective releases because the provision specifically applies to prospective waivers and releases, which are strictly prohibited in most franchise regulations as against public policy. *See Schmitt-Norton Ford, Inc. v. Ford Motor Co.*, 524 F. Supp. 1099, 1105 (D. Minn. 1981), *aff'd*, 685 F.2d 438 (8th Cir. 1982); *Sportique Motors, Ltd. v. Jaguar Cars, Inc.*, 195 F. Supp. 2d 390, 395-96

10

(E.D.N.Y. 2002), *aff'd*, 55 F. App'x 580 (2d Cir. 2003) (not in F.3d); *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 618 N.Y.S.2d 155, 159 (N.Y. Sup. Ct. 1994), *aff'd*, 625 N.Y.C.2d 904 (N.Y. App. Div. 1995), *aff'd*, 87 N.Y.2d 574 (N.Y. 1996); *Chase Manhattan Bank v. Clusiau Sales & Rental, Inc.*, 308 N.W.2d 490, 494 (Minn. 1981); *see also Redel's Inc. v. GE Co.*, 498 F.2d 95, 99 (5th Cir. 1974). Furthermore, since § 8-20-4(3)(m) is not applicable to the facts of this case, it cannot be read to define the scope of § 8-20-11. Lastly, Alabama's general policy of enforcing release agreements pursuant to § 12-21-109 does not supercede the terms of the Franchise Act's specific legislative mandate. *See, e.g.*, *S. Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368, 1373 (11th Cir. 1999).

Although cases from other jurisdictions often enforce similar release agreements, in those instances the retrospective releases or good faith settlements are explicitly excepted from the purview of the franchise regulation in question. *See Sportique Motors, Ltd.*, 195 F. Supp. 2d at 392; *Schmitt-Norton Ford, Inc.*, 524 F. Supp. at 1104-05. Unfortunately, there is no provision in the Franchise Act that instructs the Court as to whether a good faith retrospective release is enforceable or voidable. *See* §§ 8-20-11, 8-20-4(3)(m). The Court's review of the relevant provisions in the Alabama statute does not clarify whether the explicit prohibition

11

of prospective releases under § 8-20-4(3)(m) clearly implies that retrospective releases lie beyond the purview of the Franchise Act. Therefore, we certify this question to the Alabama Supreme Court.

**B. Economic Duress**

Alternatively, Appellants claim that the Release is voidable because it was obtained through economic duress. Further, Appellants contend that the question of economic duress is a matter for a jury to decide and, therefore, was improperly disposed of on summary judgment. Because the district court properly found that Appellants failed to satisfy the first and third prongs of economic duress, we affirm.

Though Appellants correctly assert that "a question of duress is ordinarily a matter for the jury," *Newburn v. Dobbs Mobile Bay, Inc.*, 657 So. 2d 849, 851 (Ala. 1995), this tenet does not mean that a claim of economic duress can never be resolved on summary judgment. *See Wilson v. S. Med. Ass'n*, 547 So. 2d 510, 514 (Ala. 1989) (holding that summary judgment was proper when plaintiff had not shown "a scintilla of evidence of fraud or duress"). Hence, the fact that Appellants raised a defense of economic duress does not automatically require the district court to deny KMA's motion for summary judgment.

The defense of economic distress has three essential elements: "(1) wrongful

acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." *Clark v. Liberty Nat'l Life Ins. Co.*, 592 So. 2d 564, 567 (Ala. 1992) (quotations & citations omitted) (brackets in original). The doctrine "applies only to special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto." *Int'l Paper Co. v. Whilden*, 469 So. 2d 560, 563 (Ala. 1985) (quotations & citations omitted). The Alabama Supreme Court explained, however, that:

> economic duress must be based on conduct of the opposite party and not merely on the necessities of the purported victim. The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress.

*Id*. (quotations & citations omitted); *see Newburn*, 657 So. 2d at 852 ("[T]he 'wrongful act' prong of the test for economic duress is not satisfied unless the victim has acted in response to unlawful or unconscionable pressure."). In addition to showing a wrongful act, "the victim must show that he had no reasonable alternative but to agree to the other party's terms or face serious financial

13

hardship." *Int'l Paper*, 469 So. 2d at 563.

      1.    *Wrongful Act*s *or Threats*

There was no "wrongful act" in the context of a duress analysis because KMA did not present unfavorable contractual terms to Appellants before acting wrongfully to coerce their consent. Although KMA's purported failure to pay ELL 12 for warranty claims, sales incentives, and advertising costs are wrongful acts, they were not carried out as part of an attempt to induce Appellants to execute the Release. Indeed, the alleged wrongful acts occurred before any mention of the Release. Consequently, a fundamental element of economic duress is missing because KMA never set forth any terms before acting wrongfully to induce Appellants' acquiescence. "[T]he mere withholding of payment of a debt, without more, is insufficient to constitute economic duress. . . ." *Id*. (internal citation omitted). Similarly, Appellants' remaining examples of wrongful acts – improper vehicle allocation, failure to provide marketing support and to locate a purchaser for the Huntsville dealership – do not support a claim of economic duress because they occurred before the Release was introduced. In addition, Appellants "had expressly agreed in the franchise agreement[], at a time when they were under no financial distress whatsoever, that they would not [sell] the business without [KMA's] consent." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1260 (4th

14

Cir. 1991). Thus, these wrongful acts do not represent unjustified coercion or extortive measures, nor do they constitute unlawful or unconscionable pressure to induce Appellants into signing the Release.

2. *Reasonable Alternatives*

As the district court observed, assuming that a lawsuit was economically impractical, the Appellants had reasonable alternatives to executing the Release. *See N. Fabrication Co. v. UNOCAL*, 980 P.2d 958, 961 (Alaska 1999). Under the circumstances, Appellants could have pursued their letter of inquiry asking whether KMA's approval of the sale to Fletcher was conditioned upon the execution of the Release. Although the deadline for closing the sale to Fletcher was approaching, there remained sufficient time for Appellants to attempt negotiations or at least communicate to KMA their concerns about the content and effects of the Release. *See Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735, 745-46 (D.S.C. 2001). Moreover, Appellants' "assertions of duress are substantially undermined by the fact that [they were] represented by counsel throughout the termination of the [Dealer] Agreement." *Id.* at 746. Accordingly, Appellants' claim of economic duress fails on the first and third prongs. The district court's ruling is affirmed.

15

## C. Dismissal of Common Law Claims

Finally, Appellants argue that the district court erred by granting summary judgment of their common law claims, which include fraud, breach of good faith and fair dealing, negligence and wantonness, and negligent and wanton supervision. *See* Compl. ¶¶ 71-100.[8] Appellants allege that these common law claims relate in part to warranty reimbursement and sales incentives, and therefore, fall within the exceptions to the Release.[9] *See* Appellants Br. 31; Appellants Reply Br. 14. This argument is without merit.

The exceptions to the Release are available only for what amounts to reimbursements for warranty services rendered, parts, and incentive or rebate

---

[8] KMA asserts that this argument should be rejected as untimely because it was not presented until after the district court granted summary judgment. Appellants presented this argument in their motion to alter or amend the order granting partial summary judgment and their motion to clarify, both of which were summarily denied by the district court. Therefore, this issue is within the proper scope of this Court's review.

[9] In relevant part, the exceptions section of Release provides that:
. . . .
Notwithstanding anything herein to the contrary, DEALER, DEALER OWNER(S) and KMA expressly agree that the mutual release shall not include or pertain to (a) any credits due to DEALER for warranty claims submitted but not processed as of the date hereof . . . and/or for warranty repairs performed by DEALER for which no claim has yet been submitted by ELL 12 to KMA as of the date hereof . . . ; (b) purchases made related to ELL 12's parts account with KMA up until the date of the closing; (c) obligations between the parties arising out of incentive or rebate programs.
. . . .
Evidentiary Submission Filed In Support of Def. KIA Motors Am., Inc.'s Mot. For Partial Summary J. Ex. 7 at 2.

16

programs.[10] *See* Evidentiary Submission Filed In Support of Def. KIA Motors Am., Inc.'s Mot. For Partial Summary J. Ex. 7 at 2. Thus, these exceptions do not provide for claims involving tortious conduct. Although these claims are partially based upon KMA's failure to reimburse Appellants for warranty services and incentive programs, the actual legal grounds for relief lie in common law torts. Appellants mistakenly assume that the supporting evidence for their common law claims, which involves the type of conduct exempted under the Release, allows those common law claims to fall under the exceptions to the Release. There is no justification for such an expansive reading of the exceptions section of the Release. The district court properly determined that Appellants' common law claims do not fit within the limited exceptions contained in the Release. It must be noted, however, that the validity of this ruling depends on the Alabama Supreme Court's determination with respect to the retrospective release issue.[11] Therefore, we

---

[10] Since the Release prohibits "all claims . . . related to, or in any manner connected with the sale and service of Kia Products, including, . . . the Dealer Agreement, and from any and all claims for damages, related to or in any manner connected with the Dealer Agreement," *see supra* note 5, the only remaining avenue for Appellants to bring their common law claims is if they fall within the exceptions outlined in the Release. *See First Class Coach & Equip., Inc. v. Thomas Built Buses, Inc.*, No. 6:05CV969ORL31JGG, 2006 WL 269983, at *6 (M.D. Fla. Feb. 3, 2006) (not in F. Supp.), *aff'd*, 209 F. App'x 922 (11th Cir. 2006) (not in F.3d).

[11] If the Alabama Supreme Court concludes that the Franchise Act prohibits enforcement of the Release, then Appellants' common law claims will not be barred because the Release will be void. Alternatively, if the Alabama Supreme Court finds that the Release is enforceable, then the district court's ruling on this issue is valid and affirmed. *See First Class Coach & Equip., Inc.*, No. 6:05CV969ORL31JGG, 2006 WL 269983, at *6 n.20.

affirm subject to the Alabama Supreme Court's interpretation of the Franchise Act as it applies to the Release.

## IV. Conclusion

For the foregoing reasons, we affirm in part and certify the retrospective release issue to the Alabama Supreme Court.

**AFFIRMED IN PART AND CERTIFIED TO ALABAMA SUPREME COURT.**

HULL, Circuit Judge, specially concurring:

I concur in full with Sections I and II of the panel opinion and in full with the result and reasoning in Sections III(B) and (C) on the issues of economic duress and the plaintiffs' common law claims. However, as to Section II(A), I am inclined to conclude that the release should be enforced in this case for several reasons.

First, under Alabama law, a written release "must have effect according to [its] terms and the intentions of the parties thereto." Ala. Code. § 12-21-109. Here, the parties entered into a written release agreement, which provided, in relevant part, that the parties:

> release, acquit and forever discharge one another <u>of and from all claims which have arisen or may ever arise</u>, demands and causes of action arising from, related to, or in any manner connected with the sale and service of Kia Products, including, without limitation, the Dealer Agreement, and from any and all claims for damages, related to or in any manner connected with the Dealer Agreement or the parties' business relationship . . . .
>
> . . . .
>
> [I]t is understood and agreed that this agreement includes all claims of every nature in kind whatsoever, known or unknown, suspected or unsuspected, arising out of, in connection with, in consequence of, in any way involving, or related to, the Dealer Agreement or the business relationship between or among [ELL 12, Edwards, and Kia] from the beginning of the world through and including the date of the Closing.

19

<u>See</u> Mutual Release Agreement (emphasis added). Aside from a few specific exceptions not relevant to this issue, the release is unambiguous that Plaintiffs released "all claims" against Defendant Kia Motors. Thus, absent some special circumstances, the release is enforceable according to its unambiguous terms and operates to bar Plaintiffs' claims.

Second, I am not persuaded by Plaintiffs' argument that the remedies provision of the Alabama Motor Vehicle Franchise Act ("Franchise Act"), Ala. Code § 8-20-11, allows them to bring suit despite the unambiguous terms of the written release. Section 8-20-11 does provide, in relevant part, that an injured party can bring suit for violations of the Franchise Act "[n]otwithstanding . . . the terms or provisions <u>of any waiver</u>." Ala. Code § 8-20-11 (emphasis added). But the statute does not provide a similar exemption from the terms of a written release. <u>See</u> <u>id.</u> Thus, there is nothing in the plain language of § 8-20-11 indicating that a written release is not enforceable with respect to violations of the Franchise Act.

This second point is underscored by another provision of the Franchise Act, Ala. Code § 8-20-4(3)(m), which provides, in relevant part, that it is unlawful for an automobile manufacturer to require a dealer to "<u>prospectively assent to a release</u>, assignment, novation, <u>waiver</u>, or estoppel which would relieve any person

20

from any liability or obligation under this chapter . . . ." Ala. Code § 8-20-4(3)(m) (emphasis added).  While <u>prospective</u> assent to both releases and waivers is barred by § 8-20-4(3)(m), § 8-20-11 refers to only waivers and does not bar settlement of claims by releases.  The fact that both terms—"release" and "waiver"—are used in § 8-20-4(3)(m) and only "waiver" is used in § 8-20-11 indicates to me that the Alabama legislature chose purposefully to limit § 8-20-11 to waivers and not to bar resolution of claims by releases.

Further, Defendant Kia Motors persuasively argues that there is a legal distinction between the terms "release" and "waiver," and therefore, that the use of the term "waiver" in the remedies provision of the Franchise Act, § 8-20-11, does not encompass the written release executed in this case.  Specifically, Defendant Kia Motors argues that the term "release" generally describes an agreement between two or more parties, whereas the term "waiver" refers to a unilateral act where one party gives up a right.[1]

For all these reasons, it seems to me that § 8-20-11 probably does not preclude the enforcement of the valid, written release agreement in this case. However, I agree fully with the panel opinion that this state law issue requires the

---

[1]The panel opinion notes this distinction between the terms "release" and "waiver," and recognizes that the district court relied, at least in part, on this distinction. <u>See</u> Panel Opinion at 7 & n.6.

interpretation of unsettled Alabama law to determine whether the release in this case is enforceable, and that this question is best answered by the Alabama Supreme Court. Accordingly, I specially concur in the judgment to certify the question.