[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14306

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 6, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-01510-CV-5-CLS


EDWIN L. EDWARDS, individually,
ELL 12, LLC, d/b/a Huntsville Kia,

                                                        Plaintiffs-Appellants,

versus

KIA MOTORS OF AMERICA, INC.,

                                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____
(January 6, 2009)

Before HULL and MARCUS, Circuit Judges, and BARZILAY,[*] Judge.

BARZILAY, Judge:

        The issue in this case concerns the application of the Alabama Motor

_____

        [*] Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting
by designation.

Vehicle Franchise Act ("Franchise Act" or "the Act") to a retrospective mutual release agreement (the "Release")[1] between Appellants Edwin Edwards and ELL 12,[2] and Appellee Kia Motors America, Inc. ("KMA"). *See* Ala. Code § 8-20-11. Unable to determine whether the relevant provisions of the Franchise Act did in fact operate to prohibit enforcement of the Release, the court certified a question to the Alabama Supreme Court to clarify the state law at issue. *Edwards v. Kia Motors of America, Inc.*, 486 F.3d 1229 (11th Cir. 2007) ("*Edwards II*"). In light of the Alabama Supreme Court's clarified view of the Franchise Act, the court affirms the holdings of the district court in full for the following reasons.

## I. Background

Notwithstanding the terms of the Release between the parties,[3] Appellants

---

[1] For purposes of this opinion, a "retrospective release" is a legal instrument that relinquishes all then existing viable claims that a franchisee automobile dealer may bring against the franchisor manufacturer and is executed for a specific known purpose.

[2] ELL 12 is a limited liability company.

[3] In relevant part, the Release provides:

DEALER, DEALER OWNER(S) and KMA do, . . . release, acquit and forever discharge one another of and from all claims which have arisen or may ever arise, demands and causes of action arising from, related to, or in any manner connected with the sale and service of Kia Products, including, without limitation, the Dealer Agreement, and from any and all claims for damages, related to or in any manner connected with the Dealer Agreement or the parties' business relationship.
. . . .
[I]t is understood and agreed that this agreement includes all claims of every nature in kind whatsoever, known or unknown, suspected or unsuspected, arising out of, in connection with, in consequence of, in any way involving, or related to,

2

commenced this action against KMA in the United States District Court for the Northern District of Alabama. *See Edwards v. Kia Motors America, Inc.*, No. CV-05-S-1510-NE, 2006 WL 4738660 (N.D. Ala. May 18, 2006) ("*Edwards I*"). Appellants sought money damages and equitable relief for (1) violations of the Franchise Act[4] and (2) common law claims of fraud, fraudulent suppression of material facts, breach of covenant of good faith and fair dealing, negligence and wantonness, and negligent and wanton supervision. In the alternative, Appellants argued that the Release was voidable because it was executed under economic duress. KMA moved for partial summary judgment, averring that Appellants' claims were barred by the Release. The district court entered summary judgment in favor of KMA, and Appellants appealed.

In *Edwards II*, the court's inquiry focused on "whether the Franchise Act permits an automobile dealer to bring a claim under the Act, despite the fact that both parties [had] already executed a mutual release agreement in which the dealer

---

the Dealer Agreement or the business relationship between or among DEALER, DEALER OWNER(S) and KMA from the beginning of the world through and including the date of the Closing.

*Edwards II*, 486 F.3d at 1232 n.5 (citing Evidentiary Submission Filed In Support of Def. KIA Motors Am., Inc.'s Mot. For Partial Summary J. Ex. 7 at 1-2).

[4] Appellants claim violations of Ala. Code §§ 8-20-4(1)(d), (3)(a) & (u) and 8-20-7(a), (b), (d).

relinquished all existing legal claims against the manufacturer in exchange for valid consideration." 486 F.3d at 1233. After a thorough review of the record and oral argument, the court was unable to determine whether § 8-20-11 of the Franchise Act prohibited the enforcement of the Release. *See id*. at 1233-35. Accordingly, the court affirmed the district court in part and certified a question to the Alabama Supreme Court.[5] *See id*. at 1238. Specifically, the court (1) certified to the Alabama Supreme Court the issue of whether a retrospective release is effective under the Franchise Act, (2) affirmed the district court's finding that Appellants failed to satisfy the first and third prongs of its claim of economic duress, and (3) affirmed the district court's determination – subject to the Alabama Supreme Court's interpretation of the Franchise Act – that Appellants' common law claims do not fit within the limited exceptions contained in the release at issue. *See id*. at 1235, 1237-38.

## II. Jurisdiction & Standard of Review

This Court has jurisdiction over appeals from the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1291. In this

---

[5] "[S]ubstantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 508 F.3d 653, 654 n.2 (11th Cir. 2007) (citations & quotations omitted).

circuit, "a state supreme court's answer to certified questions is conclusive on the issue certified." *Nat'l R.R. Passenger Corp. (Amtrak) v. Rountree Transp. and Rigging, Inc.*, 422 F.3d 1275, 1282 (11th Cir. 2005) (citations & quotations omitted). Indeed, "upon receiving an answer to a certified question, [the Eleventh Circuit] does not second-guess a State's application of its own law." *Id.* (citations & quotations omitted). The presumption that the Eleventh Circuit should apply the state law at issue is particularly strong where "private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *See In re Prudential of Florida Leasing, Inc.*, 478 F.3d 1291, 1298 (11th Cir. 2007) (citation & quotations omitted).

## III. Discussion

### A. The Alabama Supreme Court's Interpretation of the Franchise Act

Pursuant to Rule 18 of the Alabama Rules of Appellate Procedure, the court certified the following question to the Alabama Supreme Court:

> [W]hether the Franchise Act permits an automobile dealer to bring a claim under the Act, despite the fact that both parties [had] already executed a mutual release agreement in which the dealer relinquished all existing legal claims against the manufacturer in exchange for valid consideration.

*Edwards v. Kia Motors of America, Inc.*, No. 1061167, 2008 WL 2068088, at *1

(Ala. May 16, 2008) ("*Edwards III*"); *See* Ala. R. App. P. 18.[6]  After reviewing the

certified question and the parties' respective arguments, the Alabama Supreme

Court determined that the dispositive issue was "whether the legislature intended §

8-20-11 to apply so broadly as to preclude parties subject to the Franchise Act

from reaching any form of binding agreement by which then existing, ripe claims

could be mutually settled without resort to a judicial determination of the claim."

*Edwards III*, 2008 WL 2068088, at *2 (footnote omitted).  Section 8-20-11

provides as follows:

> Notwithstanding the terms, provisions, or conditions of any dealer
> agreement or franchise or the terms or provisions of *any waiver*, and
> notwithstanding any other legal remedies available, any person who is
> injured in his business or property by a violation of this chapter by the
> commission of any unfair and deceptive trade practices, or because he
> refuses to accede to a proposal for an agreement which, if consummated,
> would be in violation of this chapter, may bring a civil action in a court
> of competent jurisdiction in this state to enjoin further violations, to
> recover the damages sustained by him together with the costs of the suit,
> including a reasonable attorney's fee.

§ 8-20-11 (emphasis added).  The Alabama Supreme Court ultimately answered

the certified question in the negative, holding that while § 8-20-11 "protects both

---

[6] The Alabama Supreme Court denied a request for oral argument on the certified
question on May 15, 2008, and also denied an application for rehearing on October 24, 2008.
*See* Ala. R. App. P. 34(a), 40(a).  Accordingly, the Alabama Supreme Court's judgment on the
question from this court was certified on October 24, 2008.  *See* Ala. R. App. P. 41.

parties by prohibiting either from exempting its conduct from the requirements of the Franchise Act," it "*does not . . . render unenforceable the settlement and release of existing claims.*" *Edwards III,* 2008 WL 2068088, at *5 (emphasis added).

In so concluding, the Alabama Supreme Court looked to the plain language of the statute. Noting that the relevant terms "waiver" and "release" are not defined by the Franchise Act,[7] the Alabama Supreme Court relied on the legislative intent of the Act, which is to "protect the state's citizens from abuses by motor vehicle manufacturers and dealers, and, to that end, to regulate manufactures and dealers and the dealings between manufacturers and their dealers." *Id.* at *3 (citation & quotations omitted). That court further acknowledged that the "purpose of the Franchise Act is to give balance to the inequality of bargaining power between individual dealers and their manufacturers." *Id.* (citation & quotations omitted). However, notwithstanding the purpose of the Act, the Alabama Supreme Court stated that there is "no indication of a legislative intent to prohibit the parties to an automobile-dealership

---

[7] The Alabama Supreme Court noted that while the terms are not defined by the Franchise Act, "it is a well-settled principle of Alabama law that a waiver is generally defined as the intentional relinquishment of a known right." *Id.* at *3 n.5 (citations & quotations omitted). Further, that court recognized that under Alabama law "a release is a contract and must be supported by a lawful and valuable consideration; and, if not supported by a lawful consideration, is nudum pactum." *Id*. at *3 n.6 (citations & quotations omitted).

franchise agreement from reaching a good-faith settlement of existing claims after those claims arise and entering into a binding settlement agreement." *Id.* That is, a retrospective mutual release agreement is enforceable and not prohibited by the Franchise Act so long as (1) it is made in good faith by the parties thereto, and (2) concerns claims then existing at the time of the agreement's inception. *See id.*

Moreover, reading the Franchise Act as a whole, the Alabama Supreme Court stated that "there is no indication that § 8-20-11 does or was intended to prohibit the settlement of known claims as an alternative to taking them to trial and ultimately to judgment. If the legislature had wished to include the settlement and release of known claims in the language of § 8-20-11, it knew how to do so." *Id.* The Alabama Supreme Court also noted that while the legislature listed prospective releases and waivers in describing particular unfair trade practices under the Franchise Act, it did not similarly state that a retrospective release is an "unfair trade practice or include such a release in its list of ineffective provisions in § 8-20-11." *Id.* at *4. In other words, that the Franchise Act proscribes prospective releases and waivers does not mean that retrospective releases and waivers are similarly prohibited by that Act. Thus, the Alabama Supreme Court concluded that "[h]ad the legislature meant to require the litigation of every disagreement between a manufacturer and a dealer, it could have said so." *Id.*

8

**B. The Effect of the Alabama Supreme Court's Interpretation of the Franchise Act in *Edwards III* on the Court's Holdings in *Edwards II***

In light of the Alabama Supreme Court's interpretation and clarification of the relevant provision of the Franchise Act, the issues here are (1) whether a retrospective release lies beyond the purview of the Franchise Act, and (2) whether Appellants' common law claims continue not to fit within the limited exceptions contained in the Release.[8]  The court answers both questions in the affirmative and, therefore, upholds the rulings of the United States District Court for the Northern District of Alabama.

**1. Application of the Franchise Act to the Release**

In *Edwards II*, the court held that no provision of the Franchise Act is dispositive on the issue of "whether a good faith retrospective release is enforceable or voidable."  486 F.3d at 1235.  The court noted that "§ 8-20-4(3)(m) limits the application of the term 'any waiver' in     § 8-20-11 to those situations where a manufacturer has induced a potential franchisee dealer to waive or release all *future* claims in the initial dealership agreement."[9]  *Id*. at 1234 (emphasis

---

[8] In *Edwards II*, the court affirmed the district court's ruling to dismiss Appellants' claim of economic duress on grounds unrelated to the Release and, thus, that issue is not discussed here.  *See* 486 F.3d at 1235-37.

[9] Section 8-20-4 states that:

added). However, the court recognized that, taken together, "§ 8-20-11, § 8-20-4(3)(m), and the remedial purpose of the Franchise Act do not provide sufficient guidance to determine whether the Release should bar Appellants' claims against KMA."[10] *Id*. at 1234-35. Moreover, the court found that "Alabama's general policy of enforcing release agreements pursuant to § 12-21-109 [of the Alabama Code] does not supercede the terms of the Franchise Act's specific legislative

---

> Notwithstanding the terms, provisions, or conditions of any dealer agreement or franchise or the terms or provisions of any waiver, prior to the termination, cancellation, or nonrenewal of any dealer agreement or franchise, the following acts or conduct shall constitute unfair and deceptive trade practices: . . . . (3) For any manufacturer, factory branch, factory representative, distributor, or wholesaler, distributor branch or distributor representative: . . . . (m) To *prospectively assent* to a *release*, assignment, novation, *waiver*, or estoppel which would relieve any person from any liability or obligation under this chapter or to require any controversy between a new motor vehicle dealer and a manufacturer to be referred to any person other than the duly constituted courts of this state or the United States, if the referral would be binding on the new motor vehicle dealer.

§ 8-20-4 (emphasis added).

[10] We stated in *Edwards II* that "the remedial purpose of the statute requires that its terms be applied broadly." 486 F.3d at 1234. Specifically, the court observed that the Alabama legislature articulated the remedial nature of the statute as follows:

> The legislature finds and declares that the distribution and sale of motor vehicles within this state vitally affect the general economy of the state and the public interest and the public welfare, and that in order to promote the public interest and the public welfare, and in the exercise of its police power, it is necessary to regulate motor vehicle manufacturers, distributors, dealers and their representatives and to regulate the dealings between manufacturers and distributors or wholesalers and their dealers in order to prevent fraud and other abuses upon the citizens of this state and to protect and preserve the investments and properties of the citizens of this state.

*Id*. (quoting Ala. Code § 8-20-2).

10

mandate." *Id*. at 1235. Accordingly, the court certified to the Alabama Supreme Court the question of "whether the explicit prohibition of prospective releases under § 8-20-4(3)(m) clearly implies that retrospective releases lie beyond the purview of the Franchise Act." *Id*.

As previously noted, the Alabama Supreme Court unequivocally found that a retrospective release, such as the release agreement at issue here, is not prohibited by the Franchise Act. Specifically, that court noted that the Franchise Act "does not . . . render unenforceable the settlement and release of existing claims." *Edwards III*, 2008 WL 2068088, at *5. Any retrospective mutual release agreement is enforceable under the Act as long as (1) it is made in good faith and (2) concerns then existing legal claims between the parties. *See id*. at *3. Here, the parties executed a mutual release agreement in which Appellants relinquished all existing legal claims against KMA in exchange for valid consideration. KMA's consent to the sale of Appellants' dealership in Huntsville, which was required by the Kia Dealer Sales & Service Agreement,[11] is the valid consideration that makes the Release effective. *See Edwards II*, 486 F.3d at 1232. Therefore, the court affirms the ruling of the district court because the Release is an

---

[11] Appellants consented and entered into a Kia Dealer Sales & Service Agreement in August 2002. *See Edwards II*, 486 F.3d at 1231.

enforceable agreement between the parties that is not proscribed by the Franchise Act.

**2. Dismissal of Common Law Claims**

In *Edwards II*, the court held that Appellants' common law claims of fraud, breach of good faith and fair dealing, negligence and wantonness, and negligent and wanton supervision do not fall within the limited exceptions to the Release.[12] *See id*. at 1237-38. Specifically, the court found that "[t]he exceptions to the Release are available only for what amounts to reimbursements for warranty services rendered, parts, and incentive or rebate programs," and do not provide for claims involving tortious conduct such as Appellants' common law claims here. *See id*. at 1237. Moreover, the court noted that although the supporting evidence for their common law claims involve the type of conduct excepted under the Release, the legal grounds for relief remain in common law torts. *See id*.

---

[12] In relevant part, the exceptions section of the Release provides that:

. . . .

Notwithstanding anything herein to the contrary, DEALER, DEALER OWNER(S) and KMA expressly agree that the mutual release shall not include or pertain to (a) any credits due to DEALER for warranty claims submitted but not processed as of the date hereof . . . and/or for warranty repairs performed by DEALER for which no claim has yet been submitted by ELL 12 to KMA as of the date hereof . . . ; (b) purchases made related to ELL 12's parts account with KMA up until the date of the closing; (c) obligations between the parties arising out of incentive or rebate programs.

. . . .

*Edwards II*, 486 F.3d at 1237 n.9.

Therefore, the court affirmed the district court's holding that Appellants' claims do not fit within the limited exceptions contained in the Release, subject to the Alabama Supreme Court's finding that the Release is a valid agreement under the Franchise Act.

As we noted above, the Release is an enforceable agreement between the parties and is not prohibited by the Act. Appellants and KMA agreed to a retrospective mutual release agreement that was made in good faith and that settled then existing legal claims between them. According to the Alabama Supreme Court, such an agreement is enforceable and a binding settlement on the parties thereto. Therefore, Appellants' common law claims are dismissed and the court affirms the district court's holding on this issue.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.